## BREWER BRICK COMPANY *vs.* INHABITANTS OF BREWER.

*Constitutional law. R. S.,* 1871, *c.* 6, § 6. *Taxes—exemption from by vote of town.*

It is for the legislature to determine what property, real and personal, shall be subject to, and what shall be exempted from, taxation.

The legislature cannot constitutionally transfer to municipal corporations the power of determining upon what property, real or personal, taxes shall and upon what they shall not be imposed.

It is essential to all just taxation that it be levied with equality and uniformity.

Exemption of property from taxation is the imposition of increased taxation upon non-exempt property.

The vote of the town of Brewer by reason of which the plaintiffs claimed to be exempt from the payment of taxes therein is void, because the legislation purporting to authorize such municipal action is unconstitutional.

ON FACTS AGREED.

ASSUMPSIT to recover $309.75 paid by the plaintiffs under protest, on the twelfth day of March, 1873, as the tax for the year 1872, upon their buildings, machinery and property used in their manufacturing establishment in Brewer.

At their annual town-meeting, holden March 14, 1870, the defendants "VOTED, that the town will exempt from taxation for a term of ten years, manufacturing and refining establishments hereafter erected in town, and the capital used for operating the same, together with such machinery hereafter put into buildings already

Brewer Brick Co. *v.* Brewer.

erected, but not now used as such, and the capital used for operating the same; *provided*, that the capital invested shall not be less than ten thousand dollars; and *provided*, further, that this vote shall not be construed to apply to manufacturing or business now carried on in the town; and no distillery of intoxicating drinks or malt beer shall be entitled to the benefit of this vote."

The Brewer Brick Company organized under the general law of this State, (now found in R. S., 1871, c. 48, § 18,) on the fourth day of June, 1870, for the purpose of making brick by machinery, under a new process, operating by steam. Immediately after its organization, this corporation proceeded to erect the necessary buildings in the defendant town, and to fit them up with the requisite patented machinery, boilers, engine, &c., and have ever since been engaged in carrying on the business contemplated at its creation, having a capital invested in it of more than ten thousand dollars. The business of brick-making has been constantly carried on for more than fifty years in different parts of the town by the old hand process and horse power.

In 1871 no tax was assessed upon the plaintiffs, but in 1872 their property was assessed without any regard to the vote, and to avoid a distraint the tax was paid as aforesaid.

No objections were made to the *form* of proceedings by the town at the annual meeting of 1870, or in their assessment of the tax. If the plaintiffs were liable to be so assessed they were to be nonsuit; if not, they were to have judgment for $309.75, and interest from March 12, 1873.

*Wilson and Woodward*, for the plaintiffs.

The question is whether R. S., 1871, c. 6, § 6, ninth clause, and the previous legislation condensed in that clause, is constitutional or not. Waiving all discussions of political economy, of the policy or impolicy of such a law, the inquiry now is, whether or not it is one which our State constitution permits the legislature, in the exercise of its discretion, to pass; the U. S. constitution does not touch the subject. *Ohio Life Insurance and Trust Co. v. Debolt*, 16 Howard, 416.

States, as well as individuals, may make unwise contracts, or may fail to realize from them the anticipated advantage; may erroneously suppose it advisable to exempt banks, or other corporations from taxation; or by chartered contracts give or surrender valuable rights. Whether this State has erred or not, acted wisely or foolishly, is not the matter to be determined here: but has its legislature acted constitutionally? It is in the power of the State to say what property shall be exempt from, and what shall be subject to, taxation. *Gordon v. Appeal Tax Court*, 3 Howard, 133; *State B'k v. Knoop*, 16 Howard, 369; *Home of the Friendless v. Rouse*, 8 Wallace, 430.

The presumption is in favor of the validity of an act which has passed both branches of the legislature and received the approval of the executive. Lunt's case, 6 Maine, 412. So long as any doubt remains the court will uphold the statute. *Fletcher v. Peck*, 6 Cranch., 87; *Dartmouth College v. Woodward*, 4 Wheat., 625; and numerous other cases.

Five years after Maine became a State, the first act exempting property of certain manufacturing corporations from taxation was passed. Public Laws of 1825, c. 288. In 1831 this act was modified by one which discriminated in favor of these corporations, while not exempting them entirely.

In 1834 the Portland Manufacturing Company were, by name, exempted from taxation for three years from August 1, 1833.

When the act of 1825 was wholly repealed, in 1836, it was provided that the rights of no company previously incorporated should be affected thereby. In 1859 a law like the present, exempting for a limited time certain manufacturers of cotton and wool, was passed; in 1864 its operation was extended to all manufacturing enterprises, and explanatory acts were passed in 1867 and 1869. Public Laws of 1859, c. 91; of 1864, c. 234; of 1867, c. 76; and of 1869, c. 65.

These provisions were substantially incorporated into R. S., 1871, c. 6, § 6, ninth item. The only case in which either of these statutes has come before this court is *Gardiner, &c., Cotton Co. v. Gar-*

*diner*, 5 Maine, 133. Though the constitutionality of the act of · 1825 was not discussed in this cause it was necessarily involved in its decision, which held that certain property was exempt under the statute of 1825, c. 288.

The constitution of Maine, Art. IV., part third, § 1, gives the legislature "full power to make and establish all reasonable laws and regulations for the defence and *benefit* of the people of this State, not repugnant to this constitution nor that of the United States." What laws are reasonable and beneficial is for the legislature to determine. Cooley's Const. Lim., 27 ; *Moor v. Veazie*, 32 Maine, 343 ; *State v. Noyes*, 47 Maine, 189. The action of eight or ten legislatures shows what that branch of the government thought for the benefit of the people ; and that the court acquiesced. 5 Maine, 133. Art. IX provides that "all taxes upon real estate shall be assessed equally" ; not that they shall be a charge upon all real estate ; consequently, that of religious and charitable associations has long been exempt.

We do not question the correctness of the decision in the case of *Allen v. Jay*, 60 Maine, 124 ; we deem it sound law ; but the case at bar is different. The plaintiffs claim exemption under a general statute ; the special law, declared unconstitutional in 60 Maine, 124, under the guise of taxation, took money from all the other citizens to give it to the persons mentioned by name in that· act. Inasmuch as it is only property subsequently brought into the town that is to be exempt, no person had any existing liability to taxation increased thereby. The courts of other States have held legislation exempting certain classes of property constitutional. *Brewster v. Hough*, 7 N. H., 138 ; *Parker v Redfield*,. 10 Conn., 490 ; *Seymour v. Hartford*, 21 Conn., 481. "The· taxing power may select the objects of taxation." *State Bank v. Knoop*, 16 Howard, 369 ; Cooley's Const. Lim., 514 ; *N. J. v. Wilson*, 7 Cranch, 164 ; *McGee v. Mathis*, 4 Wallace, 143 ; *Dodge v. Woolsey*, 18 Howard, 331 ; *Wash. Uni. v. Rouse*, 8 Wallace, 439.

The constitution, Art. I, § 22, says, "No tax shall be imposed without the consent of the people, or of their representatives in the legislature." In this instance that consent has been withheld.

If this exemption is unconstitutional, then all the property and polls which our statutes purport to exempt are equally liable to taxation.

*A. W. Paine*, for the defendants.

Two questions arise : FIRST, as to the proper construction of the vote of Brewer ; and second, whether or not it is constitutional. The first *quære* arises under the proviso that the exemption shall not apply to business now carried on in the town. The idea was to introduce new *kinds* of business, not new competitors for old business. Brewer is a town of clay banks, its capacity for brick-making only bounded by infinity. It needed and intended not to offer inducements to new comers in a branch of business in which a large proportion of its citizens had already become interested, and could only be injured by competition.

This privilege of exemption is in derogation of the great principle of equality of rights and burdens, and, therefore, to be construed strictly, not extending it to any not indubitably within its terms.

SECONDLY, we say the legislation under which the vote was passed is unconstitutional. We can hardly add anything to the exhaustive arguments in the appendix to 58 Maine, 590–623 ; *Parker v. Milford*, 59 Maine, 315 ; *Allen v. Jay*, 60 Maine, 124 ; *Saunders v. Hanover*, 23 Pick., 188 ; and the case of the Boston Fire Loan.

There is as much right to raise money by taxation to give to an individual as to exempt him. The difference between giving money to a man and relieving him from the burden of a legal obligation to pay money is imperceptible; it is practically the same thing. Taxes are laid for public uses upon the principle of equality among those who enjoy those uses, according to their respective means ; to relieve one and charge others is to make the latter bear the former's burden. If the general sum of taxation were reduced, it might be more questionable ; but when the inevitable result is to excuse some and in the same proportion increase the tax of others, it cannot be sustained.

Sometimes we can test the correctness of a principle by extending its operation and making its application general. Test this rule in that way and suppose all the merchants, or mechanics, or any other class, should be exempt, all except the agriculturists or boarding-house keepers. These very classes of exempts greatly increase the public burdens and add to the necessities of taxation. The public roads, the schools which they make necessary, the fire department which they bring into use, and all the other items of public charge add largely to the taxable burden, and the exemption throws all this new and old burden upon the few non-exempts. Are these last, then, not required to pay out money for the direct use of the exempts, vastly more than they would be if they were not in town? And wherein is this extra payment different from that which they would be required to make if called upon to pay for their board and clothing. The particular provision of the objectionable statute adds force to these suggestions. Reference is made to that requirement of the law, "that all property so exempted shall be entered from year to year upon the assessment books and returned with the valuation of the several towns and cities when required by the State for the purpose of making the State valuation."

So that although the property is exempt from *town* tax, it notwithstanding goes to enhance the State tax and the county tax, which the town has to pay. This thus affords a very strong additional objection, strengthening that already adduced from the *general* nature of the statute.

The taking of money by taxation under such circumstances is objectionable in two fold manner. In the first place, the tax payer is called upon to pay on his own property, a sum which *another* and not *he* ought to pay, and secondly, he is obliged to pay an additional sum over what he would have to pay by reason of the increased or enhanced necessity of raising more money than would be requisite, but for the favored exemption. For as the court tersely remark in the Jay case, "capital is not *created* by taxation," as tax money is merely a removal of it from one man's pocket to

that of another; and when that money is increased by illegal means, the whole is illegal, and the law condemns the act.

Following up the idea, the court make the further remark in the Jay case. "*Our government is based on an equality of right, the State can not discriminate among occupations, for a discrimination in favor of one, is a discrimination against all others,*" &c.

Now, the exemption in question in its two fold operation, as already explained, has a most direct effect to increase that inequality and render most disastrous this discrimination among occupations. The facts of the case at bar afford a most striking illustration of the truth and correctness of this position of the court. By the exemption as claimed, the business of brick-making as carried on by the plaintiffs has not only the advantage over other brick-making establishments in town, by its extra facilities for producing its manufactures cheaply, and thus a great advantage over others in the market, but it has also the additional advantage of exemption from the public burdens, which make the manufactures of other establishments more expensive, and have less to their advantage in the market. And what makes the case still more aggravated is the fact that these burdens are rendered all the more oppressive by reason of this very establishment, which comes in to make expense without paying its cost. Such a discrimination is, as the court suggest, at war with republican constitutions, and so much at variance with our own, in very many of its wholesome provisions, that it is felt that no further words are requisite to give force to the position. In *Cooley v. Granville*, 10 Cush., 56, the court, in deciding a question similar to this, say very pertinently: "*For the purpose of abating taxes, especially a particular* CLASS *of taxes, towns can not raise money by taxation.*" To change the proposition to meet our case, will not change its sense; "to raise taxes for the purpose of *freeing a portion of the citizens from taxation*, a town has no power."

In *Hooper v. Emery*, 14 Maine, 379, which is an elaborate discussion of the "surplus revenue" cases, the court reason the point now presented most forcibly, and particular attention is called to

the remarks of the Chief Justice, on page 380, as being most particularly applicable here.

APPLETON, C. J.   This is an action of assumpsit to recover three hundred and nine dollars and seventy-five cents paid by the plaintiffs for taxes.   The proceedings on the part of the defendants are admitted to have been correct, and the only question presented is whether the property of the plaintiff, upon which the tax in question was assessed, is liable to assessment.

The business of brick-making has been carried on in the defendant town for more than fifty years until the present time, by the old process of making bricks with horse power.

The plaintiff corporation was organized under the general law of the State, on the fourth day of June, 1870, for the purpose of manufacturing brick in the defendant town, and after its organization, proceeded at once to erect the necessary buildings and machinery for the manufacture of brick by new processes, in which business it has been engaged to the present time.

At the annual town meeting of the defendant town held March 14, 1870, the following vote was passed, viz : "Voted that the town will exempt from taxation for a term of ten years, manufacturing and refining establishments hereafter erected in town, and the capital used for operating the same, together with such machinery hereafter put into buildings already erected, but not now used as such, and the capital used for operating the same, *provided* that the capital invested shall not be less than $10,000, and *provided*, further, that this vote shall not be construed to apply to manufacturing or business *now* carried on in the town, and no distillery of intoxicating drinks or malt beer, shall be entitled to the benefit of this vote."

The estate of the plaintiffs was duly assessed for its just and proportional share upon the whole valuation of the property of the town liable to assessment.   The plaintiffs claim exemption from contributing toward the public expenses, under and by virtue of this vote of the town.

By an act approved March 8, 1864, c. 234, § 1, it is enacted, that "all manufacturing establishments, and all establishments for refining, purifying, or in any way enhancing the value of any article or articles already manufactured, hereafter erected by individuals or by incorporated companies, and all the machinery and capital used for operating the same, together with all such machinery hereafter put into buildings already erected, but not now occupied, and all the capital used for operating the same, are exempted from taxation for a term not exceeding ten years, after the passage of this act, where the amount of capital actually invested, shall exceed the sum of two thousand dollars; *provided,* towns and cities in which such manufacturing establishments or refineries may be located, or in which it may be proposed to establish the same, shall in a legal manner give their assent to such exemption, and such assent shall have the force of a contract, and be binding for the full time specified; *and provided further,* that all property so exempted, shall be entered from year to year on the assessment books, and returned with the valuations of the several towns and cities, when required by the State for the purposes of making the State valuation." By an act approved Feb. 8, 1867, c. 76, § 1, the exemption referred to in the act of 1864, c. 234, § 1, takes effect from the date of the contract authorized by that act. By an act approved March 12, 1869, c. 65, § 1, the exemption referred to takes effect "from the date of the assent given by the town to such exemption." The preceding legislation on this subject is found condensed in R. S., 1871, c. 6, § 6, ninth clause.

Taxation exacts money from individuals as and for their contributory share of the public burdens. A tax is generally understood to mean the imposition of a duty or impost for the support of government. *Pray v. Northern Lib.,* 31 Penn., 69. "Taxes are burdens or charges imposed by the legislature upon persons or property," says DILLON, C. J., in *Hanson v. Vernon,* 27 Iowa, 28, "to raise money for public purposes or to accomplish some governmental end." Private property may be taken under the power of eminent domain for public purposes, if just compensation there-

for be made. But for private purposes it cannot be wrested from its owner even with compensation.

It has been settled by a series of decisions that the legislature cannot constitutionally authorize towns to raise money by taxation to give or loan to individuals or corporations for private purposes. A good public house may be very desirable, but in *Weeks v. Milwaukee*, 10 Wis., 242, the Supreme Court of Wisconsin, justly treated with little consideration, the claim of a right to favor, under the power of taxation, the construction of a public hotel, though the aid was to be rendered expressly "in view of the great public benefit which the construction of the hotel would be to the city." It was there decided that the public could not be compelled to aid such an enterprise from any regard to the incidental benefits to be derived therefrom. It may be very desirable to have a saw-mill in a town, and those who wish it, have full liberty to erect it; but the inhabitants cannot legally be taxed to raise money to give or to loan to those, who propose, for their own benefit, to erect one, or to take down one already erected, and to remove it from one town to another. *Allen v. Jay*, 60 Maine, 124. A terrible conflagration sweeps over a city destroying its wealth by millions. Its rebuilding is absolutely necessary for its commercial wants. But each lot of land is private property; each building to be erected thereon will be private property. Its erection is for private use. After full consideration, it was decided that the inhabitants of the city could not be taxed to raise money to loan to the sufferers to enable them to rebuild. *Lowell v. Boston*, 110 Mass.  In the *Commercial Bank v. the City of Iola*, 2 Dillon, 353, it was held that the legislature of a State had no authority to authorize taxation in aid of *private* enterprises and objects; and that municipal bonds issued under legislative authority to be paid by taxation, as a *bonus* or donation to secure the location, or aid in the erection of a manufactory or foundry, owned by private individuals, are void even in the hands of owners for value.

Contingent and incidental benefits may arise from the introduction of manufacturing capital whenever the enterprise is successful.

But the reverse may equally ensue, and the enterprise become an injurious failure. The inhabitants of a town cannot legally be taxed to raise money to give or to loan to individuals or corporations for private purposes on account of any supposed incidental advantages which may possibly accrue therefrom. The benefits are precisely those arising from the introduction of capital or labor, and none other. It matters not whether it be the building of the huge factory of the capitalist or the cottage of the laborer, the benefits are the same in kind and differ only in degree. There are benefits arising from the introduction of capital well invested and of labor well employed; but they are of the same nature as those arising from the existent capital of the place in which the incoming capital is to be invested, and the incoming labor employed. One is just as much entitled to protection as the other, and no more. But this benefit, whatever it may be, if any, arises from all capital and all labor; and as all labor and all capital is equally entitled to equal protection according to its extent, it follows that equal protection to all leaves the matter as it found it. Hence, it is universally held that the incidental benefits of capital afford no justification for partial taxation.

It is conceded in the argument that towns and cities cannot constitutionally be authorized to raise by taxation money to be given away. The plaintiff's share of the expenses of the defendant town for all public purposes, is conceded to be $309.75. If the town were empowered to raise that sum to give the plaintiffs, it is admitted that the act so empowering them would be unconstitutional, for if the town may raise money to give to A., they may do the same for B., and so on; and the property of the minority would be subject to the will of the majority. But the remission of a tax by a vote of the town is in substance and effect the same as a gift. What matters it to the plaintiffs or the defendants whether the town votes to give $309.75 to the plaintiffs, or to exempt their property from its just and proportional tax, and assess the amount of such exemption upon the remaining estate liable to taxation? It is a gift. The money raised by the rest of

the tax-payers is raised to give away; and if it may be done for these plaintiffs, it may be done for any other inhabitant as well.

But there are other and grave objections to the constitutionality of the statute upon which the plaintiffs rely.

"By the constitution, article 9, § 7: "while the public expenses shall be assessed on polls and estates, a general valuation shall be taken at least once in ten years."

The expenses for which assessments are to be made shall be public; those appertaining to the public service. No authority is given, either expressly or by implication, to assess for merely private purposes; as to give away, or to loan to individuals.

By article 9, § 8: "all taxes upon real estate, assessed by authority of this State, shall be apportioned and assessed equally, according to the just value thereof." Though this section applies specially to real estate, yet the very idea of taxation implies an equal apportionment and assessment upon all property, real and personal, "according to its just value." It cannot for a moment be admitted that the constitution authorizes an unequal apportionment and assessment upon real and personal estate, without any reference to its "just value."

The power to impose taxes is broad and liberal:—for roads, that there may be facilities for travel; for schools, that the people may be educated; for libraries, that their means of improvement may be increased; for the poor, lest they may suffer from want; for the police of the State, for the safety of the public, that crime may be detected; for the courts of law, that individual rights may be protected and enforced, and that crime, when proved, may receive its fitting punishment;—in fine, for any and all purposes which, in the most liberal sense, can be deemed public. "Taxation having for its only legitimate object, the raising of money for public purposes and the proper needs of government, the exaction of moneys from the citizens for other purposes, is not a proper exercise of this power, and must therefore be unauthorized." Cooley's Const. Lim., 487.

The legislature may determine the amount of taxation and select

the objects. They may exempt by general and uniform laws certain descriptions of property from taxation, and lay the burden of supporting government elsewhere.

But while there are no limits in the amount of taxation for public purposes, nor in the subject matter upon which it may be imposed, the requirement that it shall be uniform and equal upon the valuations made is universal.

The general tax act is based upon the whole valuation of the State. The taxes are apportioned among the several towns in the ratio of their respective valuations. The manufacturing capital to be exempted by this statute is included in the valuation of the town in which the investment is made. Whether there shall be an exemption or not depends upon the vote of the town. Now it is for the legislature to impose taxes and to exempt from taxation. But exemption from taxation includes the imposition of taxes. To the precise extent that one man's estate is exempted from taxation, to that same extent is there an imposition of the amount exempted upon the rest of the inhabitants. The $309.75 of which the plaintiffs would escape the payment, would be imposed upon the residue of the inhabitants of Brewer. This imposition of, and this exemption from, taxation are by the town and not by the legislature.

To have uniformity of taxation, the imposition of, and the exemption from taxation, must be by one and the same authority—that of the legislature. It is for the legislature to determine upon what subject matter taxation shall be imposed; upon land, upon loans, upon stock, &c., &c.; but the subject matter once fixed, the rule is general, and applies to all property within its provisions. So it may relieve certain species of property from taxation, as the tools of the laborer, the churches of religious societies, &c.; but upon the non-exempted estate the taxation must be uniform as the exemptions are uniform. It cannot be pretended that it would be constitutional to impose a tax on a church in A., and to exempt one of the same character in B.; to say that all or a part of the farms in the former shall be subject to a tax, while those in the latter shall be free from taxation. But if it be conceded that each

Brewer Brick Co. *v.* Brewer.

town has the right to tax part and exempt part of the property located therein, whatever its character, uniformity in relation to the subject-matter, as well as to the ratio of taxation, is at an end.

If, of the innumerable varieties of manufacture, different towns exempt different, or the same species of manufacture, the utter want of uniformity is obvious. The cotton manufacturer in one town is exempt, while in the next the woolen manufacturer pays his proportional share of the public burden. , Nor is this all:—if the same kind of manufacture has been heretofore carried on as is proposed to be exempted from the payment of taxes, then in the same town in case of exemption, will be seen the remarkable spectacle of two manufacturers, engaged in the same industrial pursuits, the one with his capital freed from all public burdens, the other bearing his just and proportional share. The larger the investment of exempted capital, the heavier the burden upon the non-exempted capital. Of two competing capitalists, in the same branch of industry, one goes into the market with goods relieved from taxes, while the goods of the other bear the burden. One manufacturer is taxed for his own estate and for that which is exempted, to relieve his competing neighbor, and to enable the latter to undersell him in the common market ;—and that is precisely the relation these plaintiffs bear to their competing brick makers ;—a grosser inequality is hardly conceivable !

Nor is there any conceivable benefit to any one from this injustice. The town voting the exemption will be one in which the proposed manufactures thereby to be exempted could, or could not, be advantageously carried on. If the former, the very principle of self-interest will induce such manufacturer to establish himself in the town so voting, without the inducement of such vote. It would, then, be the unnecessary giving of money to one whose interests would be promoted by manufacturing in the place in question. It would be compelling the rest of the inhabitants to add to the gains of a capitalist without participation therein. If otherwise, and the town so voting is an injudicious place for the location of the manufactures to be exempted, it is an invitation to

Brewer Brick Co. *v.* Brewer.

the manufacturer to engage in a losing business with a proffer to bear the loss to the extent of the exemption. The exemption is either unnecessary or unwise.

The plaintiffs have only paid their proportional share of the taxes in the defendant town according to its valuation. The plaintiffs are not entitled to recover. To permit them to do so would be to approve unconstitutional taxation for private purposes and to sanction a system which would destroy all uniformity as to the property upon which taxes are to be imposed, and all equality as to the ratio, so far as regards the valuation. It can never be admitted that the constitution of this State permits or allows the taxation of a portion of its citizens for the private benefit of a chosen few, and that the taxes raised for such a purpose shall be assessed without reference to uniformity of taxable property, or equality of ratio.

It becomes, therefore, entirely unnecessary to consider whether or not the plaintiffs are within the provisions of the statute or the terms of the vote under which they claim exemption from taxation.

*Plaintiffs nonsuit.*

WALTON, DICKERSON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.

CUTTING, J., concurred in the result.

PETERS, J., having been of counsel for plaintiffs, did not sit in this case, but he concurred in a similar opinion and result in *Andrews v. Oxford,* involving precisely the same question.