## OPINION OF THE COURT.

A statutory contract of tax exemption, valid upon the well settled, practical construction of the constitution when the contract was made, cannot be invalidated by a decision holding that construction to be erroneous.

| 58 | 623 |
| 86 | 300 |
| 58 | 623 |
| 70 | 643 |

| 58 | 623 |
| 74 | 97 |
| f74 | 224 |
| f74 | 490 |

## To the House of Representatives :—

The undersigned respectfully comply with your resolution requesting our opinion on the question, whether the law authorizing towns to exempt manufacturing property from taxation is a violation of the bill of rights.

"Towns may by vote exempt from taxation, for a term not exceeding ten years, any establishment therein, or proposed to be erected or put in operation therein, and the capital used in operating the same, for the manufacture of fabrics of cotton, wool, wood, iron, or any other material; and such vote shall be a contract binding for the term specified therein."—General Laws, c. 53, s. 10.

The title of the original act (Laws 1860, c. 2361) was " An act to encourage manufactures." The general purpose of the law was to increase employments, means of support and profit, home markets, business, and population, by the extension of manufacturing industry, upon which the general prosperity of the state is so largely dependent. Another purpose was to increase the future revenues of the state, the counties, and the towns, by inducing home capital to remain, and foreign capital to come, for permanent investment here, subject to taxation after the expiration of the temporary exemption. For similar purposes, similar encouragement is given to certain agricultural improvements, and the building of railroads. Gen. Laws, c. 53, s. 4; c. 62, s. 1. The exemption in each case is limited to ten years. A perpetual alienation of the whole power of taxation would be the destruction of government; and the dangerous tendency of legislation suspending any part of that power, for any period, is manifest. P. Bank v. Billings, 4 Pet. 514, 561. But we are not aware that these laws, encouraging the extension of agriculture, manufactures, and railways, have, thus far, practically impaired the efficiency of the government, or that the public has not received the benefits to which it was entitled, and which the legislature sought to gain by the promise of exemption.

By the offer and promise to exempt from taxation such property as the owner shall, in a new investment, devote to a business of public utility, and by an acceptance of that offer, and a new investment of money according to its terms, an agreement is made that contains every element of a contract binding upon both parties, if they are capable of making it. There are parties, mutual assent, consideration, and performance of the contract on one side. The supreme court of the United States held it to be a valid contract, protected by the federal constitution,—a contract, the obligation of which the state cannot impair. Its validity was understood not to be an open question. By the

stipulation that " such vote shall be a contract binding for the term specified therein," the state held out the decisions of the highest judicial tribunal as a ground on which the promise of the state could be safely relied upon. By that stipulation, the state said to owners of money,—" In addition to such faith as our word is entitled to, we invite you to put your trust in a binding contract, the constitutional inviolability of which has been settled by the court whose judgment is final and conclusive. If you doubt our honor, you can confide in the federal guaranty."

Having thus briefly stated the situation of the parties under the contracts of ten-years exemption heretofore made, and shown that the question of the performance of those contracts by the government involves a question of honesty, we may not be justified in considering the expediency or the legality of a breach of faith, and a repudiation of the solemn obligations which the government understandingly proposed and fairly entered into. When the nature of this case is understood, no legal advice can be necessary for the guidance of the party whose promise remains, in whole or in part, to be performed.

But the credit of a trustworthy people, indispensable to the strength of the state in war or in peace, ought not to be weakened by any groundless distrust of the validity of public contracts. The constitution of New Hampshire makes it the duty of the legislators and magistrates to inculcate and constantly adhere to honesty and justice as virtues necessary to preserve the blessings of liberty and good government. Constitution, part 1, art. 38 ; part 2, art. 83. As magistrates, sharing that duty with the legislature, we are not prepared to hold that it would not be illegally violated by allowing the state or any of its municipal agencies to be guilty of the fraud and tyranny of breaking such contracts of ten-years exemption as have been made with manufacturers, railroads, and farmers.

If the true construction of the state constitution did not authorize the making of those contracts, their obligation is secured by the federal guaranty. Laws authorizing such contracts for ten years were passed in the last century, soon after the date of the constitution, and we are not aware that their constitutionality was questioned by the generation that made and adopted the constitution. And, notwithstanding what was said by the court in 4 N. H. 565, and in *Brewster* v. *Hough*, 10 N. H. 138, 143–147, the construction established when the present contracts were made,—the construction acquiesced in, acted upon, and never decided to be erroneous,—was, that such contracts are constitutional. The general understanding is shown by the declaration in the act of 1860, setting forth the binding nature of these contracts, repeated by the legislature in 1867, in 1871, and in 1878. Gen. St., *c.* 49, *s.* 9 ; Laws 1871, *c.* 25 ; Gen. Laws, *c.* 53, *s.* 10. Contracts, valid by the well settled, practical construction of the constitution when they were made, cannot be invalidated by an amendment of the constitution *(Dodge* v. *Woolsey*, 18 How. 331, 360 ; *J. B. Bank* v. *Skelly*, 1 Black 436, 449, 450 ; *P. R. R. Co.* v. *Maguire*, 20 Wall.

36), or by a judicial change of construction. *Rowan* v. *Runnels*, 5 How. 134, 139; *O. L. I. & T. Co.* v. *Debolt*, 16 How. 416, 431, 432; *Pease* v. *Peck*, 18 How. 595, 599; *Gelpcke* v. *Dubuque*, 1 Wall. 175, 206; *Havemeyer* v. *Iowa County*, 3 Wall. 294, 303; *Chicago* v. *Sheldon*, 9 Wall. 50, 55, 56; *City* v. *Lamson*, 9 Wall. 477, 486; *Olcott* v. *Supervisors*, 16 Wall. 678, 690; *Pine Grove* v. *Talcott*, 19 Wall. 666, 678. Should it be now decided that the true construction of the constitution does not authorize these ten-years exemption contracts, the decision could have no retrospective effect: no such contracts hereafter made would be binding; but those heretofore made, under a different construction, would remain in force. Upon these principles of integrity and fair dealing the government was founded.

Whether the true construction of the constitution authorizes the making of ten-years tax-exemption contracts *(Brewer B. Co.* v. *Brewer*, 62 Me. 62; *Portland* v. *P. Water Co.*, 67 Me. 135; 1 Dillon Mun. Corp., *s.* 508, and authority cited), is a question on which, we conceive, the house cannot need our opinion. So long as the existing laws remain unrepealed, and the constitutional construction heretofore adopted remains unchanged, contracts hereafter made under those laws and that construction will be valid. If the legislature, for any reason, wish to prevent the making of any more such contracts, their object can be accomplished by a repeal of the laws authorizing them. As contracts made before the repeal could not be affected by the repeal, and as the power of making future contracts under those laws would be taken away by the repeal, we see no contingency in which the house can desire our opinion on the question of the soundness of the construction that has prevailed. And the proper investigation of that question would require so much time that a well-considered answer could not probably be given at the present session.

<div style="text-align: right;">

C. Doe.
Wm. L. Foster.
C. W. Stanley.
Geo. A. Bingham.
W. H. H. Allen.
Isaac W. Smith.
Lewis W. Clark.