COX NEEDLE CO. *v.* GILFORD.

A vote by a town to exempt from taxation for ten years "all capital of $5,000 and upward which may be hereafter invested for manufacturing purposes in this town," is not authorized by the statute (G. L., c. 53, s. 10), and is invalid.

PETITION, for the abatement of taxes assessed upon the plaintiff's needle manufactory, machinery, and stock in trade for the year 1882. The plaintiff is a corporation organized June 4, 1880, with a paid capital of $6,000, and having its principal place of business in the town of Gilford. On the first day of April, 1882, it had more than $5,000 invested in its manufactory, machinery, and stock employed in its business in said town. In the warrant for the town-meeting held in Gilford in November, 1878, there was an article as follows: "Art. 9. To see what action the town will take in relation to exempting from taxation future investments in said town for manufacturing purposes." Upon which

the town "voted that this town exempt from taxation for a term of ten years all capital of $5,000 and upwards which may be hereafter invested for manufacturing purposes in this town; this to include the Union Lace Co., the Howard Mill, and P. Bartlett & Co."

*S. C. Clark*, for the plaintiff.

*E. A. Hibbard*, for the defendant.

CARPENTER, J. "Towns may by vote exempt from taxation for a term not exceeding ten years any establishment therein, or proposed to be erected or put in operation therein, and the capital used in operating the same for the manufacture of fabrics of cotton, wool, wood, iron, or any other material; and such vote shall be a contract binding for the term specified therein." G. L., *c*. 53, *s*. 10. The principal question is, whether the vote taken by the town is authorized by law,—whether towns have authority under the statute to exempt from taxation by general vote all manufacturing establishments which may in the future be erected or put in operation therein, or whether their power is restricted to the exemption of such particular and specified establishments as at the time of the vote are in existence, or are then proposed by some person or persons to be erected and put in operation therein. The general purpose of the statute "to increase employments, means of support and profit, home markets, business, and population, by the extension of manufacturing industry, . . . to increase the future revenues of the state, the counties, and the towns, by inducing home capital to remain, and foreign capital to come, for permanent investment here, subject to taxation after the expiration of the temporary exemption" (*Opinion of the Justices*, 58 N. H. 623) affords little or no aid in the determination of this question, because that purpose may be effectuated substantially to the same extent under either construction.

Effect is to be given to every word of the statute, if it can be consistently with its general object. If it is construed to confer authority to exempt by a sweeping vote all establishments which may thereafter be erected, no force is given to the term "proposed." No meaning consistent with that construction can be given to the word. If the legislature intended to confer such authority its purpose would have been clearly expressed by omitting that word, but more explicitly perhaps, and more naturally, by substituting for "proposed to" the words "which thereafter may," making the statute read as follows: "Towns may by vote exempt from taxation for a term not exceeding ten years any establishment therein, or which thereafter may be erected or put in operation therein."

The statute was intended to empower towns to exempt from taxation such manufacturing establishments as may be, at the

time of the vote, proposed to be erected or put in operation on condition that they be exempted. This is the natural and ordinary meaning of the language used, which in general affords the best interpretation of statutes and of all written instruments. This construction is confirmed by the last clause of the act providing that "such vote shall be a contract binding for the term specified therein." From this language the inference is strong that the legislature intended the vote of a town to be taken upon a proposition or offer of the owner or operator of existing or projected establishments, because otherwise the vote could not be a contract at the time of its passage. A vote exempting all manufacturing establishments thereafter erected or put in operation, until accepted and acted on by erecting them or by putting them in operation, would be not a contract, but a mere proposition on the part of the town which it might withdraw or rescind at any time. It need not now be determined whether upon a proper article in the warrant a town can legally vote to exempt establishments thereafter erected or put in operation for the manufacture of certain specified fabrics, without reference to any particular manufacturer or mill and without any offer or proposal made known to the town before the passage of the vote.

By the original act (Laws 1860, c. 2361) establishments for the manufacture of cotton or wool, or of both cotton and wool, subsequently erected or put-in operation, were exempted from taxation for a period of ten years from the passage of the act, provided the towns and cities in which they were located should in a legal manner assent to such exemption. In the revision of 1867 it was so modified as to authorize an exemption of such establishments for the term of ten years from the time of the vote (Gen. St., c. 49, s. 9), and by the amendment of July 7, 1871 (Laws 1871, c. 25), the statute assumed its present shape. Under it not only manufactories of cotton and wool, but those for the making of fabrics of any material, may be exempted. The amendment was made doubtless for the reason, among others, that different towns, owing to their locality, the character of their water-power, the kinds of manufacturing business already introduced, and to various other considerations, might find it for their advantage to encourage by exemption different manufactures, and especially those of other fabrics than wool and cotton. The purpose of the legislature was to submit the whole question of exemptions to the free action of the voters of each town.

It might happen that some citizens of a town would prefer one and some another kind of manufacture, and that a comparatively small number only would favor any particular kind, while all were in favor of some kind. Hence it may be that the legislature thought it reasonable to require a vote upon the question of the exemption of a specifically proposed manufacture. If the citizens could lawfully be required to vote upon the question of exempting

from taxation all manufacturing establishments which might thereafter be erected or put in operation, the measure might be adopted although the majority were opposed to the exemption of any one particular establishment. The fair expression of the will of the majority, for which it is reasonable to suppose the legislature intended to provide, could not, or at least might not, be had.

If a general vote to exempt all manufacturing establishments which might be afterwards erected or put in operation were valid and binding upon the town, manufactures deleterious to the public health, as copper smelting or other works producing poisonous vapors, and works offensive to the senses, as a soap, fertilizer, or other manufactory emitting foul odors, might be introduced and entitled to the exemption. If the plaintiffs are exempt from taxation, so might be a manufacturing establishment erected or put in operation of such an obnoxious and injurious character as to be indictable as a public nuisance. Such results were not intended by the legislature, and there must be

*Judgment for the defendant.*

BLODGETT, J., did not sit; the others concurred.