OPINION
OF THE JUSTICES OF THE SUPREME JUDICIAL COURT
GIVEN UNDER THE PROVISIONS OF SECTION 3
OF ARTICLE VI OF THE CONSTITUTION

\* \* \* \* \* \*

QUESTION PROPOUNDED BY THE SENATE IN AN ORDER
DATED APRIL 17, 1957

ANSWERED APRIL 26, 1957

SENATE ORDER PROPOUNDING QUESTION

STATE OF MAINE

In Senate, April 17, 1957

WHEREAS, it appears to the Senate of the 98th Legislature that the following is an important question of law and the occasion a solemn one, and

WHEREAS, there is pending before the Senate of the 98th Legislature a bill (HP 983, LD 1407) entitled, "An Act Relating to Industrial Development in City of Bangor." and

WHEREAS, it is important that the Legislature be informed as to the constitutionality of the proposed bill, be it therefore

ORDERED, that in accordance with the provisions of the constitution of the State, the Justices of the Supreme Judicial Court are hereby respectfully requested to give the Senate their opinion on the following question:

Would House Paper 983, Legislative Document 1407, "An Act Relating to Industrial Development in City of Bangor." if enacted by the Legislature, be constitutional?

Name: Martin.

County: Kennebec.

In Senate Chamber April 17, 1957. Read and passed.

CHESTER T. WINSLOW, Secretary

True Copy.

Attest: CHESTER T. WINSLOW,

Secretary of the Senate

Transmitted by Director of Legislative Research pursuant to joint order.

## NINETY-EIGHTH LEGISLATURE

**Legislative Document**                          **No. 1407**

H. P. 983          House of Representatives, March 26, 1957.
Referred to Committee on Legal Affairs. Sent up for concurrence and ordered printed.

HARVEY R. PEASE, Clerk.

Presented by Mr. Totman of Bangor.

## STATE OF MAINE

## IN THE YEAR OF OUR LORD NINETEEN HUNDRED FIFTY-SEVEN

## AN ACT Relating to Industrial Development in City of Bangor.

**Emergency preamble.** Whereas, industrial development is essential to the preservation and betterment of the economy of the city of Bangor and its inhabitants; and

Whereas, present opportunities for such development are limited under present conditions, and proposed imminent industrial development awaits the availability of an industrial area; and

Whereas, many citizens of said city of Bangor have urged the immediate enactment of a bill to provide for industrial expansion; and

Whereas, in the judgment of the Legislature, these facts create an emergency within the meaning of the Constitution of Maine and require the following legislation as immediately necessary for the preservation of the public peace, health and safety; now, therefore,

Be it enacted by the People of the State of Maine, as follows:

Sec. 1. P. & S. L., 1931, c. 54, Art. VIII, additional. Chapter 54 of the private and special laws of 1931, as amended, is hereby further amended by adding thereto a new Article VIII, as follows:

### 'ARTICLE VIII.

### Industrial Development.

Sec. 1. Industrial development. The city of Bangor is hereby empowered to acquire by purchase or lease or purchase and lease, or by the right of eminent domain, lots, sites, improvements and places within the city of Bangor to be used for industrial development. The taking of real estate or any interest therein for the use of the city of Bangor for industrial park purposes by the right of eminent domain shall be effected as provided in sections 2, 3 and 4.

Sec. 2. Manner of taking. Whenever the public exigencies require it, the city council may adopt an order of taking for any land within the following described area, which shall contain a description of the land to be taken sufficiently accurate for its identification and shall state the interest therein taken and the purposes for which such property is taken.

Sec. 3. Area defined. The area in the city of Bangor within which the city of Bangor may take real estate or any

interest therein for the use of the city of Bangor for industrial park purposes by right of eminent domain shall be as follows:

Beginning at a point formed by the intersection of the center line of the Odlin road and the easterly right-of-way line of the Maine Central Railroad; thence southerly along said easterly right-of-way line of the main line of the railroad to the town line between the city of Bangor and the town of Hampden; thence easterly along said town line to an angle point in said town line; thence southeasterly along said town line to a point which is 825.5 feet northerly from the northerly side line of Crosby street; thence northeasterly parallel to and 825.5 feet northerly from said northerly line of Crosby street to Thatcher street; thence crossing Thatcher street and continuing on the same straight line to the center line of the Main Street Industrial Spur; thence northwesterly by and along the center line of said Industrial Spur to the easterly side line of Thatcher street; thence northwesterly along the easterly side line of said Thatcher street to Webster avenue and continuing across said Webster avenue to the northwesterly side line of said Webster avenue; thence southwesterly by and along the northwesterly side line of said Webster avenue to the center line of the Main Street Industrial Spur; thence northwesterly along the center line of said Industrial Spur to the center line of Odlin road; thence southwesterly by and along the center line of said Odlin road to the point of beginning.

Sec. 4. Procedure. All proceedings under the provisions of sections 1, 2 and 3 shall be in accordance with the provisions of sections 12 to 22, inclusive, of chapters 52 of the Revised Statutes of 1954.'

Sec. 2. Referendum; effective date. In view of the emergency cited in the preamble, this act shall take effect when approved, only for the purpose of permitting its submission to the legal voters within the city of Bangor, voting

at a regular or special election called and held for the purpose, by the municipal officers of the city of Bangor, to be held at the regular voting places in said city; the date of holding such election to be determined by said municipal officers. Such election shall be held not later than 8 months after the effective date of this act, and shall be called, advertised, and conducted according to the law relating to municipal elections; provided, however, that the board of registration shall not be required to prepare, nor the city clerk to post, a new list of voters. The city clerk shall reduce the subject matter of this act to the following question: "Shall the Act Relating to Industrial Development in City of Bangor, passed by the 98th Legislature, be accepted?" and the voters shall indicate by a cross or check mark placed against the words "Yes" or "No" their opinion of the same.

This act shall take effect for all the purposes hereof immediately upon its acceptance by a majority of the legal voters voting at said election; provided that the total number of votes cast for and against the acceptance of this act equals or exceeds 20% of the total votes cast for all candidates for Governor in said city of Bangor at the next previous gubernatorial election.

The result of the vote shall be declared by the city council of the city of Bangor and due certificate thereof filed by the city clerk with the Secretary of State. Failure of approval shall not prevent the municipal officers of said city of Bangor from again submitting said question to the voters of said city in the manner aforesaid.

## ANSWER OF THE JUSTICES

To the Honorable Senate of the State of Maine:

In compliance with the provisions of Section 3 of Article VI of the Constitution of Maine, we the undersigned Justices of the Supreme Judicial Court, have the honor to sub-

mit the following answer to the question propounded on April 17, 1957.

QUESTION: Would House Paper 983, Legislative Document 1407, "An Act Relating to Industrial Development in City of Bangor." if enacted by the Legislature, be constitutional?

ANSWER: We answer in the negative.

The proposed Act is designed to provide for industrial expansion in Bangor by the acquisition by the city by purchase, lease or by the exercise of the right of eminent domain of "lots, sites, improvements and places within the City of Bangor to be used for industrial development."

The Act, it may be noted, does not set forth standards for action by the city either in the acquisition of property or in its use or disposition, for example, by sale or lease for industrial purposes. These are details, however, which we need not and do not consider. Deficiencies in these respects could be remedied, if the plan broadly speaking were constitutional.

We prefer to place our answer upon consideration of the basic purpose of the Act. This, we are compelled to find, is a private purpose and not a public purpose under our constitution. It follows that the city may neither raise money by taxation nor acquire property by eminent domain for such purpose. There is neither the "public use" of taxation, nor the "public use" of eminent domain. The likelihood that public funds expended in acquisition of property might be repaid in whole or in part, or even with a profit, in its disposal does not alter the situation in its constitutional aspects. The taxpayer in the operation of the plan would be, or might be, called upon to pay therefor; and thus the constitutional bar remains firm.

We are not unmindful that the public exigencies or need for use of public monies for assistance in industrial develop-

ment under the plan here proposed is determined by the Legislature (or under the Act by the city) and not by the Courts. See *Moseley* v. *York Shore Water Co.*, 94 Me. 83 (water supply) ; *Hayford* v. *Bangor*, 102 Me. 340 (library) ; *Crommett* v. *City of Portland*, 150 Me. 217, 233 (slum clearance). The value of the plan or its economic or social benefits, however, present no issues for judicial consideration. We mention these factors that it may plainly appear that our opinion does not touch the need or desirability of the plan, but solely the constitutionality thereof.

The pertinent provisions of the Maine Constitution are:

> "He shall not . . . be deprived of his life, liberty, property or privileges, but by judgment of his peers or the law of the land." Art. I, Section 6.

> "Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it." Art. I, Section 21. "The legislature . . . with the exceptions hereinafter stated, shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this state, not repugnant to this constitution, nor to that of the United States." Art. IV, Part Third, Section 1.

We are unable to escape the conclusion that action under the Act would be for the direct benefit of private industry. An existing shoe factory or paper mill, let us say, within the proposed industrial area or park could not, for reasons clear to all, be authorized under our Constitution to acquire additional facilities by eminent domain. That such a course could well be of great value to the particular enterprise and so to the city or community would not affect the application of the law.

The test of public use is not the advantage or great benefit to the public. "A public use must be for the general public, or some portion of it, who may have occasion to use it, not a use by or for particular individuals. It is not necessary

that all of the public shall have occasion to use. It is necessary that every one, if he has occasion, shall have the right to use." *Paine* v. *Savage*, 126 Me. 121, 126.

The Act in violation of these principles seeks to have the city do for private enterprise what private enterprise cannot be authorized to do for itself.

Our court in 1954, in the *Crommett* case, *supra*, in upholding the constitutionality of slum clearance in Portland, said at page 236, in considering the redevelopment phase of the program:

> "Taken alone, the redevelopment of a city is not, in our view, a 'public use' for which either taxation or taking by eminent domain may properly be utilized."

> "However beneficial it might be in a broad sense, it would clearly be unconstitutional for the Legislature to provide for the taking of any area in a city for the purpose of redevelopment by sale or lease for private purposes. Such a proposal would amount to no more than the taking of A's property for sale or lease to B on the ground that B's use would be economically or socially more desirable."

The preamble of the Act before use reads in part:

> "**Emergency preamble.** Whereas, industrial development is essential to the preservation and betterment of the economy of the city of Bangor and its inhabitants; and

> "Whereas, present opportunities for such development are limited under present conditions, and proposed imminent industrial development awaits the availability of an industrial area; . . ."

The similarity of the purposes discussed in the extract from the court's opinion and in the preamble to the Act is at once apparent.

Under the Act the city does not seek to regulate the use of land through zoning. The plan calls as we have seen for the acquisition of property against the will of the owner if need be, with its placement in industrial use by private enterprise.

In our opinion the Act attempts what is forbidden by our fundamental law, and is unconstitutional.

Among the cases illustrating the principles on which we base our conclusion are: *Unconstitutional - private use: Allen* v. *Inhabitants of Jay*, 60 Me. 124 (loan by town to manufacturing concern) ; *Brewer Brick Co.* v. *Brewer*, 62 Me. 62 (exemption of manufacturing plant from taxation) ; *Opinion of Justices*, 118 Me. 503, 508, 513, 515 (water storage reservoir to increase value and capacity of water powers) "The dominant purpose here (water storage reservoir) is for private benefit and not for the 'benefit of the people,' and therefore the power of taxation to promote it does not exist."; *Bowden* v. *York Shore Water Co.*, 114 Me. 150, where the real purpose of the taking was to serve a private use of protection of timberlands from fire, and not a public use of protection of a public water supply; *Paine* v. *Savage, supra*, (a private logging road) ; *Haley* v. *Davenport*, 132 Me. 148 (a drain across a neighbor's land) ; *Perkins* v. *Inhabitants of Guilford*, 59 Me. 315 (town cannot tax for gift to an individual). See also *Opinion of Justices*, 58 Me. 590.

*Constitutional - public use: Laughlin* v. *City of Portland*, 111 Me. 486 (Portland municipal fuel yard) ; *State of Maine* v. *Vahlsing, Inc.*, 147 Me. 417 (potato tax).

Dated at Augusta, Maine, this 26th day of April, 1957.

Respectfully submitted:

ROBERT B. WILLIAMSON
DONALD W. WEBBER
ALBERT BELIVEAU
WALTER M. TAPLEY, JR.
FRANCIS W. SULLIVAN

MEMORANDUM:

Mr. Justice Dubord was out of the State when the foregoing question was submitted. Despite his entire willingness to return for the purpose of answering it, it is the unanimous view of his Associates that such action on his part is entirely unnecessary. He has all the material before him, has considered the question and authorizes the statement that he concurs in the answer.

ROBERT B. WILLIAMSON