STATE OF MAINE

KENNEBEC, ss.

GARY A. CRAIG and
THERESA G. CRAIG,

      Plaintiffs

    v.

KENNEBEC REGIONAL
DEVELOPMENT AUTHORITY,

      Defendant

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-00-032
SKS - KEN- 4/2/2001

DECISION ON MOTION
FOR SUMMARY JUDGMENT

This matter came before the court on the plaintiffs' motion for partial summary judgment as to counts I and II of their five-count complaint. The defendant has purported to take the plaintiffs' real property by eminent domain, and the plaintiffs complain that this taking violates Article I, § 21, of the Maine Constitution in that the taking was not for a public use (count I) and that there was no public exigency (count II).

## Background

For many years there has been a perceived need to increase economic development in the region comprised of communities in Kennebec and Somerset counties. In 1998, the State Department of Economic and Community Development announced it was soliciting applications for a $1 million federal grant for construction of a "regional super park." An application for the region in question was supported by various organizations in the Kennebec region which formed a

1

group called "People of the Kennebec." Although several sites for the proposed regional super park were investigated, the applicants finally settled on a location in Oakland comprised of parcels owned by the Town, Union Water Power Company, and the plaintiffs. The federal grant authority required a certain minimum acreage, which could be accomplished by combining the parcels. The applicants, now named FirstPark, were awarded the grant.

The enabling legislation for the regional authority was enacted by the Legislature as P. & S.L. 1998, ch. 79, "An Act to Create the Kennebec Regional Development Authority" (KRDA). The KRDA is a conglomeration of municipalities in the region which would undertake the actual construction of the business park. KRDA possesses the power enjoyed by its constituent municipal members including the power of eminent domain. KRDA's goal is to build the infrastructure for the project and to market the sites within the park to various targeted private businesses. Once the site is complete, the lots will be sold to these businesses. KRDA solicited the plaintiff Gary and Theresa Craig to sell their parcel. The Craigs refused the price offered, which was derived from an appraisal obtained by KRDA. After a hearing on the matter was conducted by the KRDA's General Assembly, the taking was approved and a Secretary's Certificate, Order of Condemnation, and a check representing the purchase price of the property were served on the Craigs. The Craigs then filed the present lawsuit and have moved for summary judgment on counts I and II. No issue is raised in this motion as to the amount paid for the property or the procedure by which the taking occurred. The

2

only issues are whether the taking was for "public use" and/or whether there was a public exigency to support the taking.

## Discussion

The taking of private property by governmental bodies in Maine is limited by Article I, § 21, of the Maine Constitution, which reads: "Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it." Therefore, both requirements -- that the taking is for public use and is required by public exigency -- must be present for the taking to be constitutional. *Finks v. Maine State Highway Commission*, 328 A.2d 791 (Me. 1974). The motion will be discussed separately as to each of the requirements below.

## Public Use

The purpose of FirstPark and therefore the purpose of taking the plaintiffs' property has been widely publicized and has been the subject of public debate and referendum. As noted above, that purpose is to enhance regional economic development through the acquisition of property to establish an industrial park and subsequent sale of the individual sites to private concerns attracted to the park. These are the material facts to which there is no dispute and count I is appropriate for decision by summary judgment as a matter of law.

The question of what constitutes a "public use" for purposes of Article I, § 21, is not new. The seminal case in the area is *Brown v. Gerald*, 100 Me. 351, 61 A. 785 (1905), in which the Law Court examined the exercise of a power company's eminent domain powers to erect a line of poles and wires across private property to

3

provide power to a manufacturing concern. The Court stated:

> The term 'public use' is difficult of exact definition, and most courts have avoided giving one. Public benefit is, however, one of the essential characteristics of a public use. There is no doubt that the conception of public benefit and public utility and the general welfare of the State, even indirectly promoted, has had much to do in tempering the opinions of the courts. The term is a flexible one, and necessarily has been of constant growth, as new public uses have developed. And it has been said that what is a public use under eminent domain statutes may depend somewhat upon the nature and wants of the community for the time being. It is beyond question that any instrumentality which tends to promote the manufacturing industries of a state, to furnish labor for its mechanic, to create the need of markets for its products, and to develop and utilize its natural advantages, is of great public benefit.

*Id.* at 361. However, the Court also stated:

> Besides it is held, and we think properly, that the term 'public use' cannot be construed to be the equivalent of general welfare or public good. It must receive a more restricted definition. (Citations omitted).

*Id.* at 365. The Court also did an extensive comparison of holdings in other states

and concluded:

> Taking the decided cases generally, we think that the weight of authority does not sustain the doctrine that a public use such as justified the taking of private property against the will of the owner, may rest merely upon public benefit, or public interest, or greater public utility.

*Id.* at 370.

*Brown* was followed by other "public use" cases including *Crommett v. City of Portland*, 150 Me. 217, 107 A.2d 841 (1954). *Crommett* is notable for the fact that the Law Court seemed to expand the definition of "public use" to include taking by eminent domain for slum clearance. The court's theory was that the slum clearance corrected conditions harmful to public health, safety, and welfare, a direct benefit

4

and advantage to all people.

Approximately fifty years after *Brown*, the Justices of the Supreme Judicial Court again addressed the "public use" issue in rendering their opinion with regard to proposed legislation remarkably similar to the authorizing legislation for KDRA. *Opinion of the Justices*, 152 Me. 440, 131 A.2d 904 (1957). The Legislature was considering a bill designed to stimulate industrial development in the City of Bangor by allowing the City to recreate an industrial park through the use of eminent domain, if necessary. In opining on the constitutionality of this legislation, the Justices stated:

> The test of public use is not the advantage or great benefit to the public. A 'public use' must be for the general public, or some portion of it, who may have occasion to use it, not a use by or for particular individuals. It is not necessary that all of the public shall have occasion to use. It is necessary that everyone, if he has occasion, shall have the right to use. *Paine v. Savage*, 126 Me. 121, 126.

> The Act in violation of these principles seeks to have the City do for private enterprise what private enterprise cannot be authorized to do for itself.

*Id.* at 446-47. Later, the Justices stated:

> The plan calls as we have seen for the acquisition of property against the will of the owner if need be, with its placement in industrial use by private enterprise.

> In our opinion, the Act attempts what is forbidden by our fundamental law, and is unconstitutional.

*Id.* at 448.

The 1957 *Opinion of the Justices* is not binding on this court in the sense of stare decisis. Nevertheless, it is a very clear statement of the rationale the Court

5

would have used had the Bangor industrial park legislation been enacted and subsequently challenged. As a result, it is clear that if the present case had been presented to the court in 1957, the plaintiffs would have prevailed. However, as noted in *Brown*, "public use" is a concept which is not static. New public uses may become recognized due to changes in technology or other factors. For example, yesterday's railway station has become today's airport and may become tomorrow's space shuttle station, all public uses for which eminent domain would be authorized. The question is whether constitutional law in Maine has evolved sufficiently in the last forty-five years to be able to say that what was not a public use in 1957 is a public use today. Confining the examination to Maine case law and opinions, this court concludes that though "public use" must change with the times, it has not changed enough to include use for regional industrial facility developments such as FirstPark.

The defendants urge the court to expand its expand its review beyond our borders to determine how the concept of "public use" should evolve. For example, the United States Supreme Court upheld legislation in the State of Hawaii which used the state's power of eminent domain to assist in the break-up of a land oligopoly with sale of the property to private individuals (those individuals being the people who were renting the land from the large landowner). *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229 (1982). In upholding the Hawaiian legislation, the Supreme Court greatly expanded federal Fifth Amendment "public use" to the point where it arguably would include any public benefit. Another example might be

*Poletown Neighborhood Council v. City of Detroit*, 304 N.W.2d 455 (Mich. 1981) in which the Michigan Supreme Court upheld the use of eminent domain to acquire property for a single specific industry (General Motors) to build an automobile assembly plant. There are other examples from other states, but each state has the right to set out and interpret constitutions which differ from each other and which may be more but not less restrictive than their federal constitutional counterparts. The Maine Constitution cannot afford our citizens less protection under the eminent domain power than has the Federal Constitution as interpreted by the Supreme Court; but it may give more protection. Given the very restrictive interpretation of "public use" set forth above, even with its evolution as seen in cases like *Crommett,* this court cannot say with any degree of certainty that our Law Court today would have a sufficiently different view of the concept to make FirstPark's taking constitutional. The court concludes the use in question is not within the realm of "public use" at its current state of evolution and the plaintiffs are entitled to judgment as a matter of law.

## Public Exigencies

The 1957 *Opinion of the Justices* noted above also contained reference to the requirement of public exigency. The Justices stated:

> We are not unmindful that the public exigencies or need for use of public monies for assistance in industrial development under the plan here proposed is determined by the Legislature (or under the Act by the city) and not by the Courts. The value of the plan or its economic or social benefits, however, present no issues for judicial consideration. We mention these factors that it may plainly appear that our opinion does not touch the need or desirability of the plan, but solely the constitutionality thereof. (Citations omitted).

7

152 Me. 440, 445-46. The impact of this comment seems to be that although the Legislature or other body exercising its power of eminent domain would always in the first instance determine both public use and public exigency, only the public use criteria may be reviewed by the courts. In any event, in light of the court's decision on count I of the complaint, it is not necessary to consider count II.

For the reasons stated above, the entry will be:

(1) Motion for summary judgment GRANTED for the plaintiffs as to count I of the complaint. The Kennebec Regional Development Authority Order of Condemnation dated June 8, 2000, is VACATED.

(2) Plaintiffs' motion for summary judgment as to count II is DENIED, but also rendered moot as a result of the court's ruling on count I.

Dated: April 2, 2001

S. Kirk Studstrup
Justice, Superior Court

8

Date Filed __7/12/00__ _____Kennebec_____ Docket No. __RE00-32__
County

Action ___Eminent Domain___

# J. STUDSTRUP

____Gary A. & Teresa G. Craig____ VS. __Kennebec Regional Development Authority__

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| John A. Ciraldo, Esq. <br> Aaron D. Julien, Esq. <br> One Canal Plaza <br> P.O. Box 426 <br> Portland, Maine 04112-0426 | -Alfred Frawley, Esq. <br> Joel Thomspon, Esq. <br> PO Box 9546 <br> Portland Maine 04112 |

| Date of Entry | |
|---|---|
| 7/12/00 | Complaint, Petition for Declaratory Judgment and Request for Injunctive and Other Relief, filed. s/Ciraldo, Esq. <br> Case File Notice mailed to atty. <br> Motion to Specify Future Course of Proceedings and Incorporated Memorandum of Law, filed. s/Ciraldo, Esq. <br> Proposed Order, filed. |
| 7/14/00 | Notice of Lis Pendens, filed. s/Ciraldo, Esq.  (attached exhibit ) |
| 07-24-00 | Original Summons with service made on Janice Porter, Town Clerk, Town of Oakland on July 18, 2000, filed. |
| 07-24-00 | Original Summons with service made on Craig Nelson, Regional Development Authority, on July 14, 2000, filed. |
| 8/3/00 | Letter from Atty. Thompson advising that the parties have agreed that the Defendant will be filing its response to the complaint on or before 8/14/00 |
| 8/14/00 | Answer of Defendant Kennebec Regional Development Authority, filed. <br> Response of Defendant to Plaintiff's Motion to Specify Future Course of Proceedings and Request for Conference, filed. s/Frawley, Esq. |
| 8/14/00 | Notice of setting of conference on 9/7/00 at 8:30 a.m. sent to attys of record. |
| 8/25/00 | SCHEDULING ORDER, Studstrup, J. <br> "Scheduling Order filed.  Discovery deadline is April 25, 2001." <br> Copies mailed to attys of record. |
| 9/7/00 | Conference in chambers. Hon.Kirk Studstrup, Presiding. <br> Attorney Ciraldo to prepare proposed order for court. |
| 9/22/00 | Proposed Scheduling Order, filed. |