JENNIE E. PAINE

*vs.*

ALBION L. SAVAGE

Franklin.    Opinion March 17, 1927.

*Sections 56, 57, and 58, of Chapter 24, of the Revised Statutes, authorizing the taking of private property for private uses, declared unconstitutional, as being in violation of Art. I, Sec. 21, of the Constitution of Maine, and of the Fourteenth Amendment to the Constitution of the United States.*

*The statute, including its several sections making up the complete provision, is not severable, hence is void in its entirety.*

Lumber operations as carried on in this State are private enterprises;  and while the promotion of their successful operation indirectly benefits the public at large, the power of eminent domain cannot rest on public benefit of this character.

Necessity of the individual cannot justify a grant of the power of eminent domain. Public necessity alone justifies governmental taking of private property. The entry and crossing of another's land authorized by the statute is for the benefit of, and is limited in its exercise to, lumber operators who find necessity therefor. The general public have no right to demand or share in it.

A public use must be for the general public or some portion of it who may have occasion to use it, not a use by or for particular individuals. It is not necessary that all the public shall have occasion to use the property taken. It is necessary that every one, if he has occasion, shall have the right to use it.

On report on an agreed statement. An action of trespass quare clausum. The acts complained of by plaintiff are admitted by defendant but he attempts to justify under sections 56, 57 and 58, chap. 24, of R. S., which purport to authorize one engaged in a lumbering operation to cross the land of another by paying the actual damage. The constitutionality of the statute is the question involved. The cause was reported on agreed statement with the stipulation that if the action is maintainable the damages to be one dollar; otherwise a non-suit to be entered.

Judgment for the plaintiff. Damages assessed at $1.00.

The case fully appears in the opinion.

*Frank W. Butler* for plaintiff.

*Cyrus N. Blanchard* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS BARNES, JJ.

STURGIS, J. Action of trespass quare clausum reported to this Court on agreed statement of facts.

R. S., Chap. 24, Sec. 56, provides: "When it is necessary for any person or persons, by themselves, or with men, teams, or log haulers, to cross or enter upon any tract of land outside of the thickly settled portion of any town, for the purpose of hauling supplies, wood, bark, logs or lumber, or to yard or land the same, such person or persons shall not be liable in an action of trespass therefor, provided, the bond is furnished as provided in the following section, but the person or persons carrying on said lumbering operation, shall be liable for all the actual damage done to said land by said men and teams or log haulers so crossing said land."

By Sec. 57 following, should the person or persons carrying on said

lumbering operation and the owners of the land be unable to agree upon the amount of damages, such person or persons before crossing or entering the land shall give bond with sufficient sureties to the owners, the amount of said bond to be determined and approved by the commissioners of the county in which the land lies.

By Sec. 58, if the lumber operators and the land owners are unable to agree upon the damages, either party may within twelve months after the bond is approved apply to the county commissioners and cause said damages to be ascertained and determined in the same manner and under the same conditions and restrictions as are prescribed by law in the laying out of railroads. A failure to apply for damages within one year after the bond is approved constitutes a waiver of the same. Provision is also made for tender.

By the agreed statement of facts it is admitted that the defendant, having purchased stumpage on certain land, found it necessary in order to cut and haul his logs to enter and cross a tract of land owned by the plaintiff, which lies outside the thickly settled portion of the town in which it is situated, and before making the entry filed a bond with the county commissioners which was duly approved.

The plaintiff justifies the bringing of this action of trespass contrary to the provisions of this statute by an attack upon the constitutionality of the law, contending that the defendant's acts constitute a "taking" of his property within the meaning of Article 1, Sec. 21, of the Constitution of Maine, and being for a private use are in violation of his constitutional guarantees. The crucial question for determination is, does the statute authorize a "taking" in the constitutional sense? and if so, is the "taking" for a public use?

"Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it." Const. of Maine, Art. 1, Sec. 21. It is universally held that private property cannot be taken by another under governmental authority for private use, with or without compensation, except by the owner's consent. This settled principle is necessarily implied from the constitutional provision. *Bowden* v. *York Shore Water Co.*, 114 Maine, 157; *Brown* v. *Gerald*, 100 Maine, 351; *Allen* v. *Jay*, 60 Maine, 124. Such a taking also violates the Fourteenth Amendment to the Constitution of the United States.

Private property can be taken only for public uses, and then only in case of public exigency. Whether there is such an exigency—

whether it is wise and expedient or necessary that the right of eminent domain should be exercised, rests solely within the determination of the Legislature.  Whether the use for which such taking is authorized is a public or private use, however, is a judicial question for the determination of the Court.  *Laughlin* v. *City of Portland*, 111 Maine, 486; *Brown* v. *Gerald*, supra; *Kennebec Water District* v. *Waterville*, 96 Maine, 234.

In *Cushman* v. *Smith*, 34 Maine, 247, an early decision of this Court, it was stated that this constitutional inhibition was not designed to prevent legislation which might authorize acts upon private property which would by the common law be denominated trespasses, including exclusive possession for a temporary purpose where there was no intent to appropriate it to a public use.

In 20 Corpus Juris, 678, with cases cited, it is said that a temporary occupation or injury to land may constitute a taking under the law of eminent domain "unless the act constitutes a mere trespass."

But in *Brigham* v. *Edmands*, 7 Gray (Mass.), 359, that Court says that the exclusive appropriation of the property of an individual for a distinct period of time, depriving the owner of its actual possession and enjoyment and exposing it to necessary and essential damage, is a "taking."

We are not here considering an incidental, temporary taking preliminary to actual appropriation, nor indirect or consequential damages occasioned in the course of authorized condemnation, and it is unnecessary to discuss the principles of law involved in cases presenting these issues.  Our consideration is directed to the question whether entry or crossing for the purpose enumerated in our statute is a taking within the meaning of the constitutional provision.

The statute includes within the purposes for which entry as well as crossing may be made "to yard or land" logs and lumber.  These are not ordinarily temporary uses in the strict sense of the term temporary.  They may continue through the lumbering operation and call for repeated and more or less continuous entry, crossing and occupation.  A careful reading of the several Sections of the statute convinces us that it includes within its provisions, not only a single entry or crossing, but also repeated and continuous use of the land owner's property for a sufficient length of time to complete the particular lumbering operation then being carried on.  Such a use, we think, is "an exclusive appropriation for a distinct period of time."

The authority to cross and enter is not expressly stated in the statute; it rests on implication. The literal import of the statute is to provide a remedy in substitution for the common law action of trespass. Its sufficiency in this regard we do not need to decide in view of the conclusions we reach on other questions involved. The plain intendment of the Legislature, however, goes beyond a question of remedy. Counsel in argument assume that the statute confers authority upon the lumber operators to "take," and we are satisfied from a careful examination of the entire statute, in the light of the subject matter and the objects to be attained, that such assumption is warranted. We think the Legislature intended to grant authority as well as provide a remedy for the acts enumerated. The meaning of the statute cannot be confined to the precise words used. That which is within the intention of the makers of this law is as much within the statute as if included in the precise language used. *Stewart* v. *Small*, 119 Me., 269; *Gray* v. *County Comm.*, 83 Me., 429; *Holmes* v. *Paris*, 75 Me., 559.

Recognizing the rule that private property cannot be taken under the right of eminent domain for private uses, counsel for the defendant points out the impracticability, if not impossibility, of operating large areas of timber lands lying back from public thoroughfares and surrounded by the land of others who will not consent to the use of their land by the operators. He asserts that passage and use as provided by this statute under consideration are absolutely necessary to the successful enjoyment of these natural resources of the State. cannot be otherwise provided, and are therefore a public benefit and a public necessity.

Lumber operations as carried on in this State are clearly private enterprises conducted upon private capital for private gain. Promotion of their successful operation undoubtedly indirectly benefits the public at large, but nevertheless they are but private enterprises. The power of eminent domain cannot rest merely on public benefit of this character. "Due protection to the rights of private property will preclude the Government from seizing it in the hands of the owner and turning it over to another on vague grounds of public benefit to spring from the more profitable uses to which the latter may devote it." Cooley's Const. Lim. (6 Ed.), 653. See *Brown* v. *Gerald*, supra, p. 370. The public benefit doctrine does not obtain in this State.

Nor can the necessities of the individual control. Public necessity alone justifies governmental taking of private property. In the words of Justice Kent, in *Bangor & Piscataquis R. R. Co.* v. *McComb,* 60 Me., 290, "This exercise of the right of eminent domain is, in its nature, in derogation of the great and fundamental principle of all constitutional governments, which secures to every individual the right to acquire, possess and defend property. As between individuals, no necessity, however great, no refusal, however unneighborly, no obstinacy, however unreasonable, no offers of compensation, however extravagant, can compel or require any man to part with an inch of his estate."

Again, the entry and crossing of the lands of others authorized by this statute is for the benefit and is limited in its exercise to lumber operators who are under the necessities defined by the statute. The general public have no right to demand or share in it. A public use must be for the general public, or some portion of it, who may have occasion to use it, not a use by or for particular individuals. It is not necessary that all of the public shall have occasion to use. It is necessary that every one, if he has occasion, shall have the right to use. *Ulmer* v. *R. R. Co.*, 98 Me., 579; *Brown* v. *Gerald*, supra.

Courts of other states have considered similar legislation. In those holding that public use means public utility, advantage, or what is productive of public benefit,—a doctrine from which we dissent,—purposes in close analogy to those of our statute are held public and the statutes authorizing the same constitutional. Such decisions are not precedents in this jurisdiction.

But in states where judicial opinion accords in the rule that the public must have a right to use the property, such purposes and statutes receive a contrary construction, and it is accordingly there held that the taking of land for logging roads and other incidental lumbering purposes for private use and benefit, the public receiving only an incidental benefit, is not appropriation for a public use and the legislative authority therefore is void. *Cozard* v. *Kanawha Hardwood Co.*, 139 No. Carolina, 293; *Apex Trans. Co.* v. *Garbade*, 32 *Oregon*, 582; *Anderson* v. *Smith-Powers Logging Co.*, 71 Oregon, 276; *Boyd* v. *Ritter Lumber Co.*, 119 Va., 348; *Hench* v. *Pritt*, 62 W. Va., 270; *Healy Lumber Co.* v. *Morris*, 33 Wash., 490. Numerous cases supporting this principle are collected in 20 C. J., 562; 21 R. C. L.,

1250; L. R. A., 1917 A, 102; 1 L. R. A., N. S., 969.　See also Cooley's Const. Lim., 7 Ed., 764; Lewis on Eminent Domain, 3 Ed., 520.

For the foregoing reasons, with full regard for the fixed rule of construction that all doubts are to be resolved in favor of the constitutionality of a statute, we think the conflict between the powers granted by this statute and the inhibitions of the Constitutions of this State and of the United States is so clear, manifest and irreconcilable that we are duty bound to declare the Act unconstitutional. The responsibility is great but the obligation in such a case is imperative.　*State* v. *Butler,* 105 Me., 91; *Trustees* v. *Bradbury,* 11 Me., 126; *Proprietors Kennebec Purchase* v. *Laboree,* 2 Me., 275.

The statute is not severable.　A contemplation of the statute and of the purposes to be accomplished by it convinces us that it would not have been passed at all except as an entirety.　The general purpose of the Act will not be served by sustaining the validity of the remedial provisions, or the Act itself only as a provision for procedure and remedy in cases of temporary trespasses not amounting to appropriation.　It must be therefore held void in its entirety.　*State* v. *Webber,* 125 Me., 319; *State* v. *Montgomery,* 94 Me., 192.

The defendant unlawfully entered the plaintiff's lands.　The statute, Sections 56, 57 and 58, R. S. Chap. 24, affords him no defense. An action of trespass q. c. will lie.　In accordance with the stipulation of the parties the entry must be,

> *Judgment for plaintiff.*
> *Damages assessed at $1.00.*