(No. 32455.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellant, *vs.* ODELL B. LANTER *et al.,* Appellees.

*Opinion filed January 22, 1953.*

Ivan A. Elliott, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, John T. Coburn, and A. Zola Groves, of counsel,) for appellant.

M. J. Brown, of Hillsboro, Carl H. Preihs, of Pana, Kinder & Dey, of Litchfield, and Frank R. Sullivan, of Springfield, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

The county court of Montgomery County sustained the motions of certain defendants to dismiss the petition by which the Department of Public Works and Buildings sought to acquire by eminent domain, for highway purposes, certain parcels of land, and easements of ingress, egress, crossing, light, air and view to and from other parcels of land. The Department appeals. The motions to dismiss challenged the jurisdiction of the county court, attacked the constitutionality of the Illinois Freeways Act of 1943, and questioned the legal sufficiency of the petition to condemn.

Considering first the question of the jurisdiction of the county court in eminent domain proceedings, that jurisdiction originates in section 18 of article VI of the constitution which provides that county courts shall have jurisdiction of certain matters specifically enumerated "and such other jurisdiction as may be provided for by general law." The Eminent Domain Act, a general law, authorizes the filing of a petition in "the circuit or county court of the county

where the said property or any part thereof is situated, * * *." (Ill. Rev. Stat. 1951, chap. 47, par. 2.) The Department of Public Works and Buildings is authorized by section 4 of the Freeways Act (Ill. Rev. Stat. 1951, chap. 121, par. 337,) to acquire property and property rights by purchase or condemnation in the manner "authorized by law." By various statutes the Department is authorized to acquire property under the Eminent Domain Act. Ill. Rev. Stat. 1951, chap. 121, par. 299; chap 127, par. 52a; chap. 105, par. 466; *Department of Public Works and Buildings* v. *Chicago Title and Trust Co.* 408 Ill. 41.

Defendants' attack upon the jurisdiction of the county court first focuses attention upon that portion of section 2 of the Eminent Domain Act which authorizes a condemnor "to apply to the circuit or county court of the county where the said property or any part thereof is situated, * * * by filing with the clerk a petition, * * *." Looking only at that language, and ignoring the rest of the statute, they contend that while there is authority to file a petition to condemn in the county court, that court is not authorized by the statute to "hear and determine eminent domain cases." To dispose of this contention, it is necessary only to direct attention to the subsequent sections of the Eminent Domain Act which explicitly spell out the procedure for hearing and determining the issues presented by a petition to condemn, and to the specific reference in section 12 to appeals in all cases "in either the circuit or county court." Ill. Rev. Stat. 1951, chap. 47, pars. 1-16, 12.

Defendants next argue that the Eminent Domain Act, to the extent that it vests jurisdiction in county courts to hear eminent domain proceedings, violates section 13 of article IV of the constitution because its title, "An Act to provide for the exercise of the right of eminent domain" does not expressly mention a grant of jurisdiction to the county court to hear such cases. It is settled, however, that the title of a statute need not be an index, (*People*

*ex rel. Greening* v. *Green,* 382 Ill. 577; *People ex rel. Hall*
v. *Pearson,* 314 Ill. 392,) and that if the title is general,
any number of provisions may be contained in the act, no
matter how diverse, so long as they are not inconsistent
with the general subject of the act and are in furtherance
of that subject. (*Baim* v. *Fleck,* 406 Ill. 193; *People
ex·rel. Soble* v. *Gill,* 358 Ill. 261; *People ex rel. Stuckart*
v. *Chicago, Burlington and Quincy Railroad Co.* 290 Ill.
327.) Certainly, it cannot be said that a specification of
the courts which have jurisdiction of proceedings for the
condemnation of property is foreign or unrelated to an
act which governs the exercise of the power of eminent
domain. We conclude therefore that jurisdiction to enter-
tain this proceeding was properly vested in the county court.

Defendants next attack the constitutionality of the Free-
ways Act. (Ill. Rev. Stat. 1951, chap. 121, pars. 334-343.)
That statute defines a freeway as "a public highway or street
especially designed for through traffic and to, from or over
which owners of or persons having interest in abutting
property or other persons have no right or easement, or
only limited right or easement, of access, crossing, light, air
or view by reason of the fact that said property abuts
upon such highway or street, or for any other reason."
(Section 1.) It authorizes the Department to designate and
establish any existing or proposed highway under its juris-
diction as a freeway "when the safety and convenience of
highway traffic will be promoted and the public interest
subserved thereby." (Section 2.) When an existing high-
way is established as a freeway "no owner of * * * land
abutting such freeway shall lay out, provide or construct
any new means * * * of ingress to or egress from said
abutting land from or to the freeway except upon written
consent of the Department * * * and said Department
* * * shall have full authority to deny * * * consent
or to specify and enforce the terms and conditions under
which new means of ingress or egress may be provided or

existing means enlarged or extended. The Department * * * shall also have authority to extinguish by purchase or condemnation any existing rights or easements of access, crossing, light, air or view to, from or over said freeway vested in abutting land * * *." (Section 3.) The Department is given similar authority when a proposed highway is established as a freeway. (Section 4.) In addition, the Department is authorized to lay out and construct local service drives providing for access to freeways, to agree with other authorities as to the elimination of highway crossings, and to give or withhold consent to new roads opening into, connecting with, or crossing over freeways. (Sections 6, 7, 8.)

The principal attack upon the constitutionality of the Freeways Act is based upon the contention that its provisions concerning the establishment of freeways and the acquisition and regulation of rights of access are incomplete, vague, and indefinite, and constitute an unlawful delegation of arbitrary powers to the Department.

Similar questions have been considered by this court in connection with earlier highway legislation. *Mitchell v. Lowden,* 288 Ill. 327, involved the 1917 Hard Road Bond Issue Act. That act provided for a State-wide system of hard roads. It specified only the points of termini, in some cases separated by hundreds of miles, and committed all other matters to the Department. The court rejected the contention of invalidity because of improper delegation of legislative power, saying: "There is no delegation of either legislative or judicial power to the department of public works and buildings. It is true that many questions,—the material to be used, the width of the roadways, the character of the construction and the plans and specifications therefor, the terms and conditions of contracts, the acceptance or rejection of work done, and the numberless details in carrying out the provisions of the act,—are left to the determination of the department of public works

and buildings, which is authorized and required to make all final decisions. The decision of such questions is ministerial." 288 Ill. at 340-41.

*People ex rel. Curren v. Schommer,* 392 Ill. 17, involved the validity of the Illinois Superhighway Act which contemplates a system of toll roads, known as superhighways, and provides that the system be planned, built, operated, and maintained by a commission of five members. The commission is empowered to acquire and convey personal and real property, including rights of way, franchises and easements, and to issue and sell bonds for the purpose of financing the planning and construction of the superhighway system. In a *quo warranto* proceeding brought against the members of the commission, it was contended that the Superhighway Act gives untrammeled discretion to the commission in the building and laying out of the superhighways. In rejecting that contention, we stated: (392 Ill. at 24) "It is an accepted constitutional doctrine that the General Assembly may not delegate legislative functions to a commission and invest an administrative agency with arbitrary powers, but it has long been accepted that the legislature may delegate that reasonable measure of authority which is necessary to accomplish the constitutional purpose desired. We hardly see how, in this age of modern development of highway and other transportation systems, in order to serve the public's ever increasing demand for safer and more rapid transportation, it can be said that the legislature, which is the voice of the people, has no freedom of action in determining the best methods of giving to the public that service for which it is willing and able to pay. It is the best judge of what is necessary to meet the needs of the public and in what manner the service shall be directed. It is true the General Assembly may not delegate its general legislative authority, but it may, however, confer upon a municipal body, which, by reason of its position, may have more knowledge on the subject or

which may do things more expeditiously than the legislature, such power as is not violative of the constitution."

The delegation of authority here involved is no broader than that which was sustained in the *Schommer case.* That case is not, as defendants argue, distinguishable because authority was there delegated to a commission, while here it is committed to a department of State government. The General Assembly is not, of course, restricted in its selection of the agencies by which its objectives are to be accomplished to commissions or to municipal or *quasi-*municipal corporations. Cf. *Department of Public Works and Buildings* v. *Chicago Title and Trust Co.* 408 Ill. 41 (Department of Public Works and Buildings); *People ex rel. Barrett* v. *Logan County Building and Loan Assn.* 369 Ill. 518 (State executive officer); *Mitchell* v. *Lowden,* 288 Ill. 327 (Department of Public Works and Buildings.)

The defendants insist, however, that excessive and unlawful authority is granted to the Department concerning the diminution, extinction, extension and creation of rights of access to the freeway, and that similar problems were not raised by the Superhighway Act. As the defendants read that act, the Superhighway Commission does not have power to condemn existing access rights except in connection with the acquisition of land. Assuming, without deciding, that defendants' interpretation is correct, we fail to see how the condemnation of access rights alone can differ, so far as delegability is concerned, from the condemnation of a part of a tract of land and the rights of access to the remainder of that tract.

The provisions of the Freeways Act which authorize the Department to designate by agreement or stipulation the points at which access will be permitted from abutting lands to the freeway and to specify the terms and conditions upon which such access will be allowed are said to have the effect of giving the Department power to zone without any limitation all lands abutting upon any road.

It is argued that the Department may select any road for designation as a freeway and then may at its own discretion, depending upon whim or fancy, allow or deny access to the freeway. We do not read the act so broadly. It contemplates the extinction of easements of access and the like by eminent domain upon the payment of just compensation. The legislative purpose is the establishment of limited access highways especially designed for through traffic. It will hardly be argued that this objective is beyond the constitutional power of the General Assembly. As a principle of constitutional law, it is settled that the General Assembly may, in the pursuit of an objective within its constitutional power, delegate that measure of authority which is necessary to accomplish its purpose. In the present case, to require the General Assembly to determine itself precisely what rights of access should be extinguished and what retained would completely frustrate the legislative purpose. That determination is therefore committed to the Department as is the further authority to regulate rights of access in view of specific conditions which may from time to time exist.

It is true that the standards prescribed in the present statute to govern the Department in the designation of freeways and the regulation of access rights are expressed in general terms—"when the safety and convenience of highway traffic will be promoted and the public interest subserved thereby." But it is also true that the host of varied and unforeseeable conditions which may exist or arise along the State's thousands of miles of through traffic highways make greater particularity impossible. The constitutional doctrine of separation of powers was not intended to confine the legislature to the alternatives of complete inaction or the imposition of rigidly inflexible laws which would distort rather than promote its objective. When it is necessary, the legislature may commit to others the responsibility for the accomplishment of the details of

its expressed purpose. The scope of permissible delegation must be measured in terms of the complexity and diversity of the conditions which will be encountered in the enforcement of the statute. So it has been said almost from the outset that the legislature may authorize others to do things which it might properly, but cannot understandingly or advantageously, do itself. (*People ex rel. Caldwell* v. *Reynolds*, 5 Gilman 1; *Mowry* v. *Department of Public Works and Buildings*, 345 Ill. 121; *Smith* v. *Board of Education*, 405 Ill. 143.) The defendants' contentions that the Freeways Act is unconstitutional cannot be sustained.

Defendants also contend that the petition to condemn is legally insufficient upon its face. Pointing to the allegation of the petition that the Department "did heretofore, on to-wit: April 12, 1944, designate and establish a portion of Federal Aid Route 5 (designated as U.S. 66) immediately adjacent to the property hereinafter described, as a 'freeway,' \* \* \*," defendants argue that no statutory authority exists for the designation of a *portion* of a route as a freeway. Their position is that the statute requires that all, rather than a portion, of a route be designated as a freeway. The contention is not sound. The statute authorizes the department "to designate and establish any existing or proposed highway" as a freeway. (Ill. Rev. Stat. 1951, chap. 121, par. 335.) It does not concern itself with routes. And, in any event, the fact that the statute authorizes the corporate authorities of cities, villages and incorporated towns to establish freeways flatly negatives the contention that all of a route must be designated a freeway if any portion of it is to be so designated. The highway here involved is specifically identified on the plats attached to the petition, and that is sufficient.

It is also argued that the petition is defective because it does not recite that "the safety and convenience of highway traffic will be promoted and the public interest subserved" by taking the land and easements described in the peti-

tion. But the petition does allege that the highway abutting defendants' land has been designated as a freeway under the statute, which necessarily assumes a determination by the Department of the factors of safety, convenience and public interest. That allegation, coupled with the further allegation that acquisition of the property rights described "is necessary to the public use of such highway as a freeway" is sufficient.

An understanding of two other objections to the legal sufficiency of the petition requires a description of the location of the property in relation to the freeway. The petition affects twenty parcels of land, not all of which are involved in this appeal. At seven points, where the freeway intersects other roads, a parcel of land abutting the freeway is sought to be taken. Where the roads intersect substantially at right angles, the land taken is a triangular tract; where the intersection forms a more acute angle, the land taken is a rectangular tract. In no instance does the tract to be taken exceed .06 of an acre. Defendants contend that the petition shows on its face that there is no necessity for the taking of these tracts, and that in taking them the Department is unlawfully interfering with the rights of township authorities over the intersecting roads. Looking only at the petition and the plats attached to it, we draw contrary inferences. To mention but one possible factor related to safety, the desirability of increased visibility at the points of intersection of a highway carrying through traffic is obvious. And while the land taken abuts on township roads, it also abuts on the freeway, and the power given to the Department to relocate, alter, reconstruct and improve the freeway is ample to sustain the proposed taking.

With respect to the other thirteen tracts, the Department seeks to condemn, with certain named exceptions, "rights of access, crossing, light, air or view, to, from or over" the freeway. As to the tracts of this type involved

in this appeal, defendants contend that eminent domain will not lie where no property of the defendant is taken. The contention is based upon the following statement in *Horn* v. *City of Chicago,* 403 Ill. 549, 556-7: "We have repeatedly held that an abutting property owner is not entitled to have condemnation proceedings instituted to determine damages to his property occasioned by a public improvement where no part of his property is physically taken and that the city or other authorized sovereign constructing such improvement is not required, under the constitution or the Eminent Domain Act or any other law or statute, to institute condemnation or other proceedings to ascertain such damages. (*People ex rel. Pratt* v. *Rosenfield,* 399 Ill. 247; *People ex rel. Tyson* v. *Kelly,* 379 Ill. 297; *County of Mercer* v. *Wolff,* 237 Ill. 74.)" That statement does not support defendants' contention. Here, the damage to defendants does not flow incidentally from a "public improvement" in the physical sense in which that term is used in the *Horn case.* By the present statute the Department is authorized to acquire access rights where no physical change is made in an existing highway, and section 3 of the Freeways Act expressly authorizes the Department "to extinguish, by purchase or condemnation, any existing rights or easements of access, crossing, light, air or view to, from or over said freeway vested in abutting land." Ill. Rev. Stat. 1951, chap. 121, par. 336.

In this court the defendants have sought to sustain the judgment below by attacking the sufficiency of the petition as a matter of law, and it is on that basis that we have discussed the issues. In the court below, however, the motions to dismiss raised questions as to the necessity of taking property and easements to the extent sought by the petition. In determining the quantity of property and property rights necessary to be taken in a condemnation proceeding, the petitioner is permitted great discretion, and in the absence of a clear abuse of its power, the petitioner's

decision is conclusive. (*City of Chicago* v. *Vaccarro,* 408 Ill. 587; *Inter-State Water Co.* v. *Adkins,* 327 Ill. 356.) But where the petitioner's determination is challenged, extrinsic proof is required, except in the rare, and perhaps entirely hypothetical, case in which the petition itself shows that the amount of land sought is not necessary. (See, *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 Ill. 511; cf. *City of Chicago* v. *Vaccarro,* 408 Ill. 587; *Chicago, North Shore and Milwaukee Railroad Co.* v. *Chicago Title and Trust Co.,* 328 Ill. 610; *City of Chicago* v. *Lehmann,* 262 Ill. 468.) In the court below, some evidence was heard, but the hearing was had without notice to some of the defendants who are appellants here, and apparently was never concluded. When the cause is remanded, evidence should be heard upon the questions raised by the defendants' motion as to the necessity of acquiring property and easements to the extent sought.

By cross-appeal, defendants assert that the court erred in denying their motion to quash the *alias* summons. The circumstances are these: The petition for condemnation was filed on February 17, 1949, and the original summons was issued by the clerk of the county court on February 18, 1949. The summons was not at once placed with the sheriff for service, but was retained by the attorneys for the petitioner for sixty-four days. The attorneys for the petitioner then altered the return dates on the summons to June 6, 1949, as the first return day, and June 20, 1949, as the second return day. The altered summons was delivered to the sheriff on May 4, 1949, and served on May 6, 1949. On June 6, 1949, certain defendants filed motions to quash the altered summons and to dismiss the petition for condemnation on the ground that by mishandling the summons the petitioner violated the requirements of section 5 of the Civil Practice Act and Supreme Court Rules 3 and 4. On July 6, 1949, the court sustained the motion to quash the summons, denied the motion to dismiss the

petition, and ordered *alias* summons to issue. The *alias* summons was issued on July 7, 1949, and served on July 18, 1949. Certain defendants then filed a motion to quash the *alias* summons, contending that since the original summons was void due to the fault of the attorneys for the petitioner, the trial court should have dismissed the cause and no *alias* summons should have issued. On October 19, 1949, the court denied the motion to quash the *alias* summons.

We therefore have before us for determination (1) whether the court on July 6, 1949, properly denied the defendants' motion to dismiss the petition in view of the invalidity of the original summons and (2) whether the court on October 19, 1949, properly denied the motion to quash the *alias* summons. The Eminent Domain Act provides that "Service of summons and publication of notice shall be made as in other civil cases." (Ill. Rev. Stat. 1951, chap. 47, par. 4.) Section 1.22 of the Statutory Construction Act (Ill. Rev. Stat. 1951, chap. 131, par. 1.22) provides that the term "other civil cases" shall be deemed to refer to the Civil Practice Act and the Rules adopted pursuant thereto. It is therefore clear that as to the service of process, proceedings under the Eminent Domain Act are governed by the Civil Practice Act and the Rules of the Supreme Court.

Section 4 of the Civil Practice Act requires that "This Act shall be liberally construed, to the end that controversies may be speedily and finally determined according to the substantive rights of the parties." (Ill. Rev. Stat. 1951, chap. 110, par. 128.) Rule 5 of the Supreme Court gives a trial court ample discretion in the handling of a failure to serve summons promptly. The trial court (1) "may" order the issuance of *alias* writs or (2) "may" dismiss the action. In the case at bar the court did not abuse its discretion, and properly denied the motion to dismiss the action and ordered *alias* summons to issue. The

*alias* summons was properly made returnable and properly served, and the court was correct in denying the motion to quash the *alias* summons.

For the reasons stated, the judgment of the county court must be reversed and the cause remanded for further proceedings in accordance with the views expressed in this opinion.

*Reversed and remanded.*