W. A. HEDRICK v. A. H. GRAHAM, J. EMMETT WINSLOW, H. MAYNARD HICKS, C. HEIDE TRASK, M. E. ROBINSON, DONNIE A. SORRELL, C. A. HASTY, J. VAN LINDLEY, FORREST LOCKEY, JAMES A. GRAY, JR., JAMES A. HARDISON, W. RALPH WINKLER, JUNE F. SCARBOROUGH, J. F. SNIPES, HARRY E. BUCHANAN.

(Filed 11 January, 1957.)

**1. Pleadings § 15—**

A demurrer admits the truth of factual averments well stated and such relevant inferences of fact as may be deduced therefrom, but it does not admit any legal inferences or conclusions.

**2. Same—**

Upon demurrer a pleading will be liberally construed with a view to substantial justice between the parties, giving the pleader the benefit of every reasonable intendment in his favor.  G.S. 1-151.

**3. Easements § 2—**

The owner of land abutting a highway has a right of egress from and ingress to his own property, which right constitutes an easement appurtenant beyond the right enjoyed by the public in general.

**4. Eminent Domain § 3—**

The deprivation, by the exercise of the right of eminent domain or the police power, of the right of the owner of land abutting a public highway to access to the highway is a taking of his property *pro tanto* for which compensation must be allowed.

**5. Eminent Domain § 1—**

Eminent domain is the power of the sovereign to take or damage private property for a public purpose on payment of just compensation.

**6. Constitutional Law § 11—**

The police power is a necessary attribute of sovereignty and is coextensive with the necessity of safeguarding the interests of the public.

**7. Eminent Domain § 5—**

The right to authorize the power of eminent domain and the mode of the exercise thereof are wholly legislative, subject to the constitutional limitations that private property may not be taken for public use without just compensation and reasonable notice and opportunity to be heard.

**8. Statutes § 5a—**

While the words of a statute must be taken in the sense in which they were understood at the time the statute was enacted, this rule does not preclude a statute from applying to things and conditions not in existence at the time of the enactment when the language of the statute is sufficiently broad and comprehensive to include them by a fair and reasonable interpretation.

**9. Eminent Domain § 6—**

The State Highway and Public Works Commission has been given statutory authority, in the construction or reconstruction of a public highway, to condemn or severely curtail an abutting landowner's right of access to the highway, upon payment of just compensation, in order to constitute the highway one of limited-access.  G.S. 136-1, G.S. 136-18(b), G.S. 136-18 (e), G.S. 136-19.

**10. Statutes § 5a—**

Where the language of a statute expresses the legislative intent in clear and unambiguous terms, the words employed must be taken as the final expression of the meaning intended unaffected by its legislative history.

**11. Same—**

> Legislative acquiescence in the practical interpretation of a statute by the administrative agency is entitled to some weight by the courts in construing the act.

JOHNSON, J., not sitting.

RODMAN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Johnston, J.,* June Civil Term 1956 of DAVIDSON.

Civil action for a permanent injunction heard upon a demurrer.

This is a summary of the allegations of plaintiff's complaint:

The defendants, sued as individuals, are the Chairman and Members of the State Highway and Public Works Commission, and in respect to the acts hereafter alleged have purported to act in their official capacity and by virtue of their offices as such Commission.

Plaintiff owns two tracts of land in Davidson County, which are described by metes and bounds. A public highway designated as U. S. Highway 29, 70 and 52 (a project sometimes specified as No. 6734) crosses plaintiff's two tracts of land, and is, and for some time past has been, in the course of reconstruction under the control and direction of the State Highway and Public Works Commission. Both tracts of plaintiff's land abut for a considerable distance on both sides of the right of way of this highway. Plaintiff is the owner of the fee in said highway abutting his land. The State Highway and Public Works Commission does not own in fee any of the lands abutting plaintiff's land used by this highway, or which it has attempted to appropriate for a limited-access highway.

The defendants, purporting to act under the authority of their offices as the State Highway and Public Works Commission, and by virtue thereof, have designated a portion of this highway crossing plaintiff's land a limited-access highway, thereby attempting to extinguish plaintiff's rights as an abutter, and limiting his access thereto except at points permitted by the defendants; have advised plaintiff and others that this highway across his land has been appropriated as a limited-access highway, and have caused signs to be erected along the portion of the highway crossing his land to that effect. Notwithstanding repeated requests by plaintiff, the defendants have refused, and still refuse, to rescind the limited-access highway designation and to permit access from plaintiff's abutting land to the highway.

The defendants, acting individually and collectively as members of the State Highway and Public Works Commission, have attempted to appropriate some of plaintiff's land for a limited-access highway. The defendants are without legal authority to create limited-access high-

ways, or to deprive plaintiff of his right of access (both ingress and egress) to said highway at any point where it abuts his land, and by their acts have invaded, and threaten further to invade, his personal and property rights. As a proximate result of such acts, much of his land has been cut off from access to this highway diminishing its value and preventing sales to purchasers desirous of highway access, all to his irreparable injury, for which he has no adequate remedy at law.

Wherefore, the plaintiff prays that the defendants, individually and collectively, be permanently enjoined from designating Highway 29, 70 and 52, where it abuts plaintiff's land, a limited-access highway, from erecting signs to that effect, from in any way interfering with the right of access to the highway by plaintiff, or those who may hereafter have an interest in his land, and from taking or attempting to take limited-access easement rights from plaintiff thereby extinguishing or attempting to extinguish plaintiff's right of access to the highway as an abutting landowner.

The defendants demurred to the complaint on the following grounds: One, the court has no jurisdiction of the defendants and the subject of the action, for that the defendants are the Chairman and Members of the State Highway and Public Works Commission, an unincorporated agency or instrumentality of the State of North Carolina, and do constitute such instrumentality, as alleged, that the relief sought is to enforce action by the Commission, that the Commission has the right of sovereign immunity against suit, except where consent to be sued has been given by law, and consent has not been given for a suit of this nature, and the Superior Court is not a court of original jurisdiction over it. Two, the complaint does not allege facts sufficient to constitute a cause of action for that: (a) The complaint alleges that the defendants constitute the State Highway and Public Works Commission, which has lawful authority to do all of the alleged acts; (b) the allegations relied on to establish irreparable injury state an alleged diminution of the value of his land after the completion of the highway improvement project, and sound in damages in a proceeding in law and not for relief in equity; (c) that if plaintiff has suffered any damages by reason of any alleged diminution in the value of his land, he has an adequate remedy at law by virtue of G.S., Chapters 136 and 40; (d) the complaint fails to allege any facts constituting any unlawful act or wrongful omission by defendants, or any threatened wrongful act, or any facts entitling plaintiff to injunctive relief, and (e) the acts alleged have been consummated, and there is no injunctive relief for a *"fait accompli."*

From a judgment sustaining the demurrer, plaintiff appeals.

Clarence Kluttz, Lewis P. Hamlin, Jr. and Walser & Brinkley for Plaintiff, Appellant.

R. Brookes Peters, E. W. Hooper and Womble, Carlyle, Sandridge & Rice for Defendants, Appellees.

PARKER, J.    It is familiar learning that a demurrer admits the truth of factual averments well stated and such relevant inferences as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader, and that we are required to construe the pleading challenged by a demurrer liberally with a view to substantial justice between the parties and to make every reasonable intendment in favor of the pleader.  G.S. 1-151; *McKinley v. Hinnant,* 242 N.C. 245, 87 S.E. 2d 568; *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440.

The complaint alleges, "the State Highway and Public Works Commission does not own in fee any of the lands now used by said U. S. Highway 29, 70 and 52 which abut the property of the plaintiff, or which the State Highway and Public Works Commission has attempted to appropriate for limited-access purpose."    The complaint further alleges that the defendants purporting to act under their authority, and by virtue of their office as the State Highway and Public Works Commission, have designated a portion of said highway where it crosses plaintiff's land as a limited-access highway, thereby attempting to extinguish plaintiff's rights as an abutter by limiting his access to the highway, and that they have erected signs along the highway announcing "this area appropriated for highway purposes to be limited-access." It seems plain that the acts complained of were the acts of the State Highway and Public Works Commission as an agency or instrumentality of the State.

In Anno. 43 A.L.R. 2d, p. 1073, note 1, it is stated: "A limited-access highway may be defined as a roadway designed particularly for the movement of through traffic, upon which cross traffic has been eliminated or severely curtailed, to which entrances and exits are strictly controlled, and in which abutting landowners have no easement or right of access different from that enjoyed by the general public.    Such highways are sometimes called 'freeways,' 'thruways,' 'express ways,' 'parkways,' or 'belt-lines.' "

The Federal-Aid Highway Act of 1956 in Sec. 108(a) states: "It is hereby declared to be essential to the national interest to provide for the early completion of the 'National System of Interstate Highways.' . . . It is the intent of the Congress that the Interstate System be completed as nearly as practicable over a thirteen-year period and that the entire system in all the States be brought to simultaneous completion. Because of its primary importance to the national defense, the name of

such system is hereby changed to the 'National System of Interstate and Defense Highways.'" Sec. 108(i) provides: "The geometric and construction standards to be adopted for the Interstate System shall be those approved by the Secretary of Commerce in cooperation with the State highway departments. Such standards shall be adequate to accommodate the types and volumes of traffic forecast for the year 1975." Sec. 112 of this Act provides: "All agreements between the Secretary of Commerce and the State Highway Department for the construction of projects on the Interstate System shall contain a clause providing that the State will not add any points of access to, or exit from, the project in addition to those approved by the Secretary in the plans for such project, without the prior approval of the Secretary." This Act provides for the apportionment of federal funds among the States for the purposes of the Act, and in Sec. 108(h) provides for construction by the States of such highways in advance of apportionment of federal funds.

The complaint alleges that the "public highway designated as U. S. Highway 29, 70 and 52, which crosses" plaintiff's "land is presently, and for sometime past has been, in the course of reconstruction under the control and direction of the State Highway and Public Works Commission of North Carolina, of which the defendants are members, such project being sometimes designated as No. 6734." G.S. 136-18(L) provides "the said State Highway and Public Works Commission shall have such powers as are necessary to comply fully with the provisions of the present or future federal aid grants." It would seem a fair inference from the allegations of the complaint set forth above in this paragraph that the reconstruction of the section of Highway 29, 70 and 52 by the State Highway and Public Works Commission was, and is, being done in compliance with the requirements of Project No. 6734, and that it is being reconstructed to meet the standards and requirements of the 1956 Federal-Aid Highway Act, so that it can be incorporated into the National System of Interstate and Defense Highways.

Motor car transportation is a basic need of modern society. It is of vital importance in the social and economic life of our people. The development of high speed motor car transportation has brought more and more traffic congestion and an ever mounting grisly toll of automobile accidents. Forty thousand deaths, a million and one-half injuries, and two billion dollars worth of property damage each year (Levin, "Public Control of Highway Access and Roadside Development 3"—Public Roads Administration, 1943) demonstrate the gravity of the problem confronting public highway authorities.

It is said in Anno. 43 A.L.R., 2d, p. 1073, note 2: "According to an article in 3 Stanford L. Rev. 298 (citing as authorities Levin, 'Public Control of Highway Access and Roadside Development 3' and Bulletin

No. 67 of the American Road Builders' Association, entitled 'Highway Economics and Design Principles') less than 15 per cent of the mishaps on ordinary roads will occur on an equal mileage of limited-access highways, and, while limited-access urban highways can easily handle 1,500 vehicles per lane per hour, only 400 vehicles per lane per hour can be carried on ordinary urban streets."

This Court said in *Sanders v. Smithfield,* 221 N.C. 166, 19 S.E. 2d 630: "It is generally held that the owner of abutting property has a right in the street beyond that which is enjoyed by the general public, or by himself as a member of the public, and different in kind, since egress from and ingress to his own property is a necessity peculiar to himself. *Colvin v. Power Co.,* 199 N.C. 353, 154 S.E. 678; *Hiatt v. Greensboro,* 201 N.C. 515, 522, 160 S.E. 748; *Davis v. Alexander,* 202 N.C. 130, 162 S.E. 372; *Glenn v. Board of Education,* 210 N.C. 525, 187 S.E. 781; *Henderson v. Lexington,* 132 Ky. 390, 111 S.W. 318; 29 C.J.S. 910, sec. 105. The right is in the nature of an easement appurtenant to the property, and abridgment or destruction thereof by vacating or closing the street, resulting in depreciation of the value of the abutting property, may give rise to special damages compensable at law. *Brakken v. Mpls. & St. L. Ry.,* 29 Minn. 41, 11 N.W. 124; also cases cited *supra.* Beyond acceptance of this fundamental principle, authorities differ as to practically every other phase of the subject under discussion. However, following the line of authorities considered commendable and controlling, it is settled law in this State that under such circumstances the interference with the easement, which is itself property, is considered *pro tanto,* a 'taking' of the property for which compensation must be allowed, rather than a tortious interference with the right. *Hiatt v. Greensboro, supra; Phillips v. Telegraph Co.,* 130 N.C. 513, 41 S.E. 1022; *Stamey v. Burnsville,* 189 N.C. 39, 126 S.E. 103."

The most important private right involved in limited-access highway cases is the right of access to and from the highway by an abutting landowner. The basic problem in every case involving destruction or impairment of the right of access is to reconcile the conflicting interests—*i.e.* private *versus* public rights. The time has come when ever increasing consideration must be given to the promotion of public safety on the highways and to the concept of roads whose purpose is not land service but traffic service. The term, a land service road, has been used to describe an ordinary highway intended primarily to enable abutting landowners to have access to the outside world as distinguished from the limited-access road designed primarily to move through traffic. Anno. 43 A.L.R. 2d, p. 1074, note 7. Two methods are available for curtailing the right of access—the right of eminent domain and the police power. Eminent domain is the power of the sovereign

to take or damage private property for a public purpose on payment of just compensation. *Mount Olive v. Cowan*, 235 N.C. 259, 69 S.E. 2d 525. "As was said by Mr. Justice Brown, in *Camfield v. United States*, 167 U.S. 518, 524, 42 L. Ed. 260, 262, 17 Sup. Ct. Rep. 864, citing *Rideout v. Knox*, 148 Mass. 368, 2 L.R.A. 81, 12 Am. St. Rep. 560, 19 N.E. 390: 'The police power is not subject to any definite limitations, but is coextensive with the necessities of the case and the safeguard of the public interests.'" *Tanner v. Little*, 240 U.S. 369, 60 L. Ed. 691. The police power is a necessary attribute of sovereignty. *Brewer v. Valk*, 204 N.C. 186, 167 S.E. 638. The construction of limited-access highways is bound to cause a dislocation of rights. Justice demands that these dislocations be adjusted in a way that will be fair to both property owners and the public.

In *Georgia v. Chattanooga*, 264 U.S. 472, 68 L. Ed. 796, the Court said: "The power of eminent domain is an attribute of sovereignty, and inheres in every independent state. Citing authorities. The taking of private property for public use upon just compensation is so often necessary for the proper performance of governmental functions that the power is deemed to be essential to the life of the state. It cannot be surrendered, and, if attempted to be contracted away, it may be resumed at will. Citing authorities. It is superior to property rights (*Kohl v. United States*, 91 U.S. 367, 371, 23 L. Ed. 449, 451); and extends to all property within the jurisdiction of the state . . ."

"This power (eminent domain) existed in each of the original thirteen states immediately on the assumption of independence." 18 Am. Jur., Eminent Domain, sec. 7.

Under our division of governmental power into three branches, executive, legislative and judicial, the right to authorize the exercise of the power of eminent domain, and the mode of the exercise thereof, is wholly legislative. *Little v. Loup River Public Power Dis.*, 150 Neb. 864, 36 N.W. 2d 261, 7 A.L.R. 2d 355; *Paine v. Savage*, 126 Maine 121, 136 A. 664, 51 A.L.R. 1194; 18 Am. Jur., Eminent Domain, sec. 9, p. 637, sec. 308, p. 954. However, as both the Federal and our State Constitutions protect all persons from being deprived of their property for public use without the payment of just compensation and a reasonable notice and a reasonable opportunity to be heard, proceedings to condemn property must not violate these guaranties. *Dohany v. Rogers*, 281 U.S. 362, 74 L. Ed. 904.

There seems to be no doubt that the General Assembly of North Carolina can authorize the State, or a governmental agency or instrumentality of the State, to exercise the power of eminent domain to condemn or to severely curtail an abutting landowner's right of access to a public highway adjacent to his property for the construction or reconstruction of a limited-access highway upon the payment of just

compensation for the destruction or impairment of his right, which is in the nature of an easement appurtenant to his property, and upon giving him a reasonable notice and a reasonable opportunity to be heard. *Department of Public Works & Buildings v. Lanter,* 413 Ill. 581, 110 N.E. 2d 179; *Petition of Burnquist,* 220 Minn. 48, 19 N.W. 2d 394; *Opinion of the Justices,* 99 N.H. 505, 105 A. 2d 924; *State Roads Com. v. Franklin,* 201 Md. 549, 95 A. 2d 99; *People v. Thomas,* 108 Cal. App. 2d 832, 239 P. 2d 914; *State ex rel. State Highway Com. v. James,* 356 Mo. 1161, 205 S.W. 2d 534; *Neuweiler v. Kauer,* (1951 C.P.) Ohio, 107 N.E. 2d 779; Anno. 43 A.L.R., p. 1072 *et seq.; Liddick v. City of Council Bluffs,* 232 Iowa 197, 5 N.W. 2d 361; 29 C.J.S., Eminent Domain, secs. 105 and 122; 18 Am. Jur., Eminent Domain, secs. 183 and 185; Restatement, Property, Servitudes, secs. 450, 453, 455, 456, 497, 507, 508. See: 3 Stanford Law Review, pp. 298 *et seq.* "Freeways and Rights of Abutting Owners"; Washington Law Review, Vol. 27, pp. 111 *et seq.* "The Limited-Access Highway."

In 29 C.J.S., Eminent Domain, sec. 105, it is written: "An easement is an interest in land for which the owner is entitled to compensation, as much so as if the land to which the easement is appurtenant were taken or injured. Thus the owner of land abutting on a street or highway has a private right in such street or highway, distinct from that of the public, which cannot be taken nor materially interfered with without just compensation, and this is so, although another owns the fee in the highway." In support of the text many cases are cited, among them four of our own.

In *Petition of Burnquist, supra,* it was held that easements of access on a highway which had been designated as a freeway were property rights which could be taken under the power of eminent domain upon the payment of proper compensation. The Court held that the delegation to the highway commissioner of the power to acquire "land" and the necessary "right of way" for highway purposes and for the proper and safe maintenance thereof included the right to condemn rights of access, there being no necessity for special legislation specifically providing for the condemnation of such easements.

*Opinion of the Justices, supra,* sustained the constitutionality of a statute providing that when an existing highway was converted to a limited-access highway, pre-existing commercial facilities should be permitted to retain their right of access to the highway, while such rights as to other property should be condemned.

In *Department of Public Works & Buildings v. Lanter, supra,* the Illinois Supreme Court rejected the contention that the statute conferred no authority to condemn rights of access alone, where there was no actual taking of any land.

It is to be noted that the easement of access extinguished, or sought to be extinguished, here lies completely within the definite limits of the right of way of Highway 29, 70 and 52. In this respect the case here is distinct from those cases which seek to extinguish easements outside of the highway limitations, such as those involving billboards, snow fences and the like, and cases which relate to such outside easements like *Preston v. City of Newton*, 213 Mass. 483, 100 N.E. 641, and *Doon v. Inhabitants of Natick*, 171 Mass. 228, 50 N.E. 616, have no application to the instant case.

The General Assembly of North Carolina has vested the State Highway and Public Works Commission, an agency or instrumentality of the State, with the following authority and powers:

G.S. 136-18(b) vests the State Highway and Public Works Commission with the power "to acquire by gift, purchase, or otherwise, any road or highway, or tract of land or other property whatsoever that may be necessary for a State highway system."

G.S. 136-19 vests the State Highway and Public Works Commission with the power to condemn such private property "as it may deem necessary and suitable for road construction, maintenance, and repair, and the necessary approaches and ways through, and a sufficient amount of land surrounding and adjacent thereto, as it may determine to enable it to properly prosecute the work." This Court said in *Proctor v. Highway Commission*, 230 N.C. 687, 55 S.E. 2d 479: "When land is appropriated under this power of eminent domain for the right of way for a road, the general public acquires an easement only in the land so taken, and the fee to the property remains in the landowner, who may subject the land to any use which is not inconsistent with its use for the purpose for which it is taken."

G.S. 136-18(e) vests the State Highway and Public Works Commission with the power "to make rules, regulations and ordinances for the use of, and to police traffic on, the State highways . . ."

G.S. 136-1 states in part: "The intent and purpose of this section is that there shall be maintained and developed a State-wide highway system commensurate with the needs of the State as a whole and not to sacrifice the general state-wide interest to the purely local desires of any division."

Plaintiff states in his brief, "the Legislature has the plenary power not only to grant or withhold the right to exercise the power of eminent domain, but also to define the *quantum* of interest or estate which may be acquired, whether an easement or the fee or some estate intermediate these two." However, plaintiff contends that the powers of eminent domain granted to the State Highway and Public Works Commission do not include the power to condemn plaintiff's right of access to U. S. Highway 29, 70 and 52, and the General Assembly had no

intent to grant such power, because a limited-access highway "was inconceivable at the time of the enactment of the statutes" vesting such Commission with the power of eminent domain, and because such lack of intent is further shown by the fact that at the 1951 Session of the General Assembly the House of Representatives passed a bill to establish limited-access highways and to acquire lands therefor (House Journal 1951, pp. 927, 944), and this bill was reported unfavorably by the Senate Committee on Public Roads (Senate Journal, p. 653) and was not passed by the Senate. The plaintiff contends that the 1951 General Assembly refused to grant the State Highway and Public Works Commission authority to establish limited-access roads, though at the same session it granted such authority to Municipal Corporations operating Toll Roads, G.S. 136-89.6(j) and to the North Carolina Turnpike Authority, G.S. 136-89.16(j).

This Court said in *In re Barnes,* 212 N.C. 735, 194 S.E. 499: " 'Where a statute is expressed in general terms and in words of the present tense, it will as a general rule be construed to apply not only to things and conditions existing at its passage, but will also be given a prospective interpretation, by which it will apply to such as come into existence thereafter.' 59 C.J., 1105."

In *Cain v. Bowlby,* 114 F. 2d 519, *certiorari* denied, 311 U.S. 710, 85 L. Ed. 462, it is said: "And it is a general rule in the construction of statutes that legislative enactments in general and comprehensive terms and prospective in operation, apply to persons, subjects and businesses within their general purview and scope, though coming into existence after their passage, where the language fairly includes them." Abundant authority is cited in support.

The words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted. *U. S. v. Stewart,* 311 U.S. 60, 85 L. Ed. 40; *Summer v. State Highway Com.,* 143 S.C. 196, 141 S.E. 366; 50 Am. Jur., Statutes, p. 224.

In 50 Am. Jur., Statutes, p. 225, it is written: "On the other hand, the fact that a situation is new, or that a particular thing was not in existence, or was not invented, at the time of the enactment of a law, does not preclude the application of the law thereto. The language of a statute may be so broad, and its object so general, as to reach conditions not coming into existence until a long time after its enactment."

The power and authority vested in the State Highway and Public Works Commission, by virtue of the statutes enacted by the General Assembly, "to acquire by gift, purchase, or otherwise, any road or highway, or tract of land or *other property whatsoever* that may be necessary for a State Highway system," to condemn private property "as it may deem necessary and suitable for road construction," "to make rules, regulations and ordinances for the use of, and to police

traffic on, the State highways," and to have "such powers as are necessary to comply fully with the provisions of the present or future federal aid grants," are expressed in language broad and extensive and general and comprehensive enough and the object so general and prospective in operation as to authorize the Commission to exercise the power of eminent domain to condemn or severely curtail an abutting landowner's right of access to a State public highway adjacent to his property for the construction or reconstruction, maintenance and repair, of a limited-access highway upon the payment of just compensation, and we so hold. We are fortified in our position by the language of the General Assembly set forth in G.S. 136-1: "The intent and purpose of this section is that there shall be maintained and developed a State-wide highway system commensurate with the needs of the State as a whole."

The failure of the 1951 Session of the General Assembly to enact into law a bill introduced to provide for limited-access roads by the Commission does not change our opinion. The statutes we have set forth above conferring the power of eminent domain upon the Commission are not ambiguous or of doubtful meaning, but are so clear and plain, so general and comprehensive in nature and the object so general and prospective in operation that there can be no reasonable doubt as to their meaning as we have held above. Perhaps, the Senate thought that the Commission had the power under existing statutes to construct limited-access roads, and that was the reason it declined to pass the House Bill. Certainly, the 1951 General Assembly was not opposed to limited-access roads as shown by the enactment of G.S. 136-89.6(j) and G.S. 136-89.16(j). The 1951 rejected bill as set forth in appellant's brief provided that in connection with a limited-access highway the highway authorities might, in their discretion, acquire an entire lot, block, or tract of land, if by so doing, the interests of the public will be best served, even though said entire lot, block, or tract is not immediately needed for the right of way proper. That provision may have caused its rejection.

But passing on from speculation as to why the 1951 Bill was rejected, this Court said in *Raleigh v. Bank,* 223 N.C. 286, 26 S.E. 2d 573: "As a rule in determining the proper construction to be given legislative enactments, the courts are not controlled by what the Legislature itself apparently thought the proper interpretation should be, but the language employed, taken in connection with the context, the subject matter and the purpose in view must be considered in order to ascertain the legislative intent, which, after all, is the primary purpose of all judicial construction."

In *U. S. v. Missouri P. R. Co.,* 278 U.S. 269, 73 L. Ed. 322, 377, the Court said: "Where the language of an enactment is clear and construction according to its terms does not lead to absurd or impracticable

consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed."

It is also a well known fact that some 170 miles of limited-access roads constructed by the State Highway and Public Works Commission are complete and open to traffic, and that the 1955 General Assembly did nothing to stop such work on the Commission's part. Such acquiescence in the practical interpretation by the Commission of the statutes authorizing it to exercise the power of eminent domain in constructing limited-access roads and taking an abutting landowner's right of access thereto is entitled to some weight. *S. v. Emery*, 224 N.C. 581, 31 S.E. 2d 858; 157 A.L.R. 441; *Hannah v. Commissioners*, 176 N.C. 395, 97 S.E. 160.

The complaint does not state facts sufficient to constitute a cause of action for injunctive relief against the defendants, nor against the State Highway and Public Works Commission, if it had been sued, and the demurrer was properly sustained.

For any damage plaintiff has sustained, he has an adequate remedy at law by virtue of Chapters 136 and 40 of G.S.

It is not necessary for us to pass upon the other ground of the demurrer.

Affirmed.

JOHNSON, J., not sitting.

RODMAN, J., took no part in the consideration or decision of this case.